928 A.2d 54 (2007)
394 N.J. Super. 605
Robert FLICK, Plaintiff-Appellant,
v.
PMA INSURANCE COMPANY and Kathleen Reed, individually, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 28, 2007.
Telephonically Reargued June 11, 2007.
Decided July 17, 2007.
*55 Steven L. Kessel, Red Bank, argued the cause for appellant (Drazin & Warshaw, attorneys; Mr. Kessel, on the brief).
Aurora N. Riccio, Morristown, argued the cause for respondents on March 28, 2007; Timothy P. Smith argued the cause for respondents on June 11, 2007 (Coughlin Duffy, attorneys; James P. Lisovicz, of counsel; Ms. Riccio and Mr. Lisovicz, on the briefs).
Levinson Axelrod, attorneys for amicus curiae New Jersey Advisory Counsel on Safety and Health (Richard Marcolus, of counsel and on the brief).
Before Judges STERN, COLLESTER and SABATINO.
The opinion of the court was delivered by
SABATINO, J.A.D.
Plaintiff Robert Flick, who presently has a disability claim pending before the Division of Workers' Compensation, ("the Division") appeals an August 9, 2006 order dismissing his related action in the Law Division. The Law Division case arose out of plaintiff's dissatisfaction with the failure of his employer's third-party administrator of compensation benefits, defendant PMA Insurance Co. ("PMA"), to comply in a timely manner with orders issued by the compensation judge authorizing certain medical procedures needed to treat plaintiff's work-related injuries. Plaintiff's lawsuit essentially contends that the enforcement mechanisms available in the Division are inadequate, and that he must resort to the jurisdiction of the Superior Court to ensure that he will obtain further medical care in a prompt and effective manner.
We affirm the dismissal of plaintiff's Superior Court complaint because plaintiff has failed to exhaust administrative remedies available to him before the judge of compensation, particularly the numerous forms of relief and sanctions set forth at N.J.S.A. 34:15-28.1 and at N.J.A.C. 12:235-3.14. We do so, however, without prejudice to plaintiff's ability to renew an effort to seek judicial relief if and when such administrative measures are exhausted.
Plaintiff currently is an employee of the County of Monmouth. Pursuant to contract, the medical treatment for the County's employees arising out of workers' compensation is monitored by a case manager from Meridian Health Systems, the County's benefits provider. The County also has retained defendant PMA as its third-party administrator for workers' compensation claims. Defendant Kathleen Reed is employed by PMA as the individual adjuster charged with managing plaintiff's claims.
On or about April 9, 1997, and again on or about August 13, 2002, plaintiff suffered personal injuries arising out of and in the course of his employment with the County. The injuries involve plaintiff's lower back. Plaintiff made claims for workers' compensation benefits from the County after each instance of injury.
Plaintiff's complaint, which he filed in the Law Division in February 2006, alleges that, as part of their handling of his claim for benefits, defendants "repeatedly ignored and/or rejected the recommendations of physicians that [PMA] had authorized to examine and treat the plaintiff as to the appropriate course of treatment to be rendered. . . ." Plaintiff asserts that, due to the alleged inaction of defendants, he was "required to obtain [o]rders compelling *56 such benefits from the [Division of Workers' Compensation] on August 14, 2003, September 25, 2003, September 30, 2004 and December 22, 2005." Plaintiff asserts that defendants did not comply with the compensation judge's orders and ultimately "den[ied] and delay[ed] reasonable and necessary medical treatment and disability benefits. . . ."
Plaintiff's complaint further alleges that these actions of defendants were "taken in bad faith, without a justifiable basis in law or fact, and constitute an improper denial of insurance benefits to the plaintiff. . . ." He contends that defendants' actions were "willful, wanton and done with malice." Consequently, the complaint asserts, "plaintiff sustained and experienced unnecessary pain and suffering in addition to what he otherwise would have experienced from his injuries and suffered from a worsening of his medical condition." Apart from such enhanced pain and suffering, plaintiff allegedly sustained financial harm, including the loss of temporary disability benefits and having to bear personal responsibility "for medical bills that should have been paid through the workers' compensation insurance coverage of his employer."
By way of relief, plaintiff's Law Division action sought compensatory damages, punitive damages, costs, interest, and counsel fees. Plaintiff also requested a trial by jury.
Shortly after filing an answer denying plaintiff's contentions of wrongdoing, defendants PMA and Reed moved to dismiss plaintiff's claims under R. 4:6-2(e) for failing to state a claim upon which relief may be granted. In essence, defendants argued that plaintiff's sole recourse lied in the Division pursuant to the exclusive remedy features of the Workers' Compensation Act. See N.J.S.A. 34:15-8.
After hearing oral argument on the motion, Judge Daniel Waldman issued a written opinion determining that plaintiff's claims were not cognizable in the Law Division and were inconsistent with the statutory and regulatory scheme underlying our system of workers' compensation. Judge Waldman consequently dismissed plaintiff's lawsuit in an order dated August 9, 2006. This appeal ensued.
Our State's workers' compensation law specifically provides that when an employee agrees to serve in employment protected by the Workers' Compensation Act ("the Act"), N.J.S.A. 34:15-1 to -128, the exclusive remedy of the worker is to pursue a claim for benefits under the Act. Charles Beseler Co. v. O'Gorman & Young, Inc., 188 N.J. 542, 546, 911 A.2d 47 (2006); Kristiansen v. Morgan, 153 N.J. 298, 312, 708 A.2d 1173 (1998). It is undisputed that plaintiff's injuries at issue here were sustained during the course of his employment with the County and are presumptively compensable under the Act.
The exclusivity provision of the Act, N.J.S.A. 34:15-8, states:
Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee and for compensation for the employee's death shall bind the employee's personal representatives, surviving spouse and next of kin, as well as the employer, and those conducting the employer's business during bankruptcy or insolvency.
[N.J.S.A. 34:15-8 (emphasis added).]
Our courts have consistently enforced the Act's exclusivity provision, subject to the statute's narrow exception for intentional wrongs set forth at N.J.S.A. 34:15-8. See, e.g., Tomeo v. Thomas Whitesell Constr. *57 Co., 176 N.J. 366, 823 A.2d 769 (2003); Kibler v. Roxbury Bd. of Educ., 392 N.J.Super. 45, 919 A.2d 878 (App.Div. 2007); DeLane ex rel. DeLane v. City of Newark, 343 N.J.Super. 225, 778 A.2d 511 (App.Div.2001); Bryan v. Jeffers, 103 N.J.Super. 522, 248 A.2d 129 (App.Div. 1968), certif. denied, 53 N.J. 581, 252 A.2d 157 (1969).
The administrative agency specially created to adjudicate workers' compensation claims is the Division of Workers' Compensation within the Department of Labor and Workforce Development. See N.J.S.A. 34:15-49. The Division has "exclusive original jurisdiction of all claims for workers' compensation benefits" under the Act. Ibid. The judges of compensation within the Division are vested with extensive powers to decide contested issues of eligibility for coverage, the proven nature and extent of a worker's alleged disability, and the reasonable necessity of medical treatment required to address such work-related injuries. Hopler v. Hill City Coal & Lumber Co., 5 N.J. 466, 76 A.2d 17 (1950). Review of final decisions of the Division jurisdictionally is assigned to the Appellate Division, both by the Act and by general court rule. See N.J.S.A. 34:15-66; R. 2:2-3(a)(2).
The Legislature specifically envisioned that there may be situations in which an employer or its insurance carrier may "unreasonably or negligently delay[]" providing compensation to an injured worker entitled to compensation benefits. In particular, N.J.S.A. 34:15-28.1 prescribes that
[i]f a self-insured or uninsured employer or employer's insurance carrier, having actual knowledge of the occurrence of the injury, or having received notice thereof such that temporary disability compensation is due pursuant to [N.J.S.A.] 34:15-17, unreasonably or negligently delays or refuses to pay temporary disability compensation, or unreasonably or negligently delays denial of a claim, it shall be liable to the petitioner for an additional amount of 25% of the amounts then due plus any reasonable legal fees incurred by the petitioner as a result of and in relation to such delays or refusals. A delay of 30 days or more shall give rise to a rebuttable presumption of unreasonable and negligent conduct on the part of a self-insured or uninsured employer or an employer's insurance carrier.
[N.J.S.A. 34:15-28.1 (emphasis added).]
Apart from the twenty-five percent enhancement and counsel fee-shifting authorized under N.J.S.A. 34:15-28.1, the Division's administrative regulations set forth a panoply of enforcement mechanisms for judges of compensation. Those mechanisms are listed at N.J.A.C. 12:235-3.14. The regulation provides that numerous remedies may be imposed by the Division for an employer or other party's "unreasonable failure to comply with any written order of a Judge of Compensation or with any requirement of statute or regulation. . . ." Id. Those measures include the power to:
1. Dismiss or grant the motion or application for enforcement of order;
2. Close proofs, dismiss a claim or suppress a defense;
3. Exclude evidence;
4. Order costs or reasonable expenses, including interest or monies due and/or attorney's fees, to be paid to the Second Injury Fund of the State of New Jersey or an aggrieved party, attorney, or other representative of a party;
5. Refer matters for other administrative, civil or criminal proceedings; or
6. Take other appropriate case-related action.

*58 [N.J.A.C. 12:235-3.14(a)1 through 6.]
The regulation also specifies an expeditious procedure for a claimant to pursue such enforcement measures:
(b) A party or the court on its own motion may move for enforcement of an order. After receiving notice of an application for enforcement, a party shall file a written response to the application within 10 days of such notice. The response shall include the reasons for any noncompliance and manner and time periods to ensure compliance with the order at issue. Before taking any action under (a) above, the judge of Compensation shall hold a hearing on the appropriateness of the action and the reasonableness of any compensatory levy or sanction.

[N.J.A.C. 12:235-3.14(b) (emphasis added).]
As noted, the regulation calls for the judge of compensation to conduct a hearing on the allegation of non-compliance, and to consider at such a hearing "the reasonableness of any compensatory levy and sanction." Id. The term "compensatory levy and sanction" is defined in the regulation to "mean an amount awarded to compensate[1] for actual losses, including, but not limited to, interest on monies due a party as well as attorney's fees and administrative costs to the Division." N.J.A.C. 12:235-3.14(d).
In most recently expanding N.J.A.C. 12:235-3.14 in 2002, the Division specified that a judge of compensation's powers included the ability to refer matters for "other administrative, civil or criminal proceedings." Through this expansion, the Division specifically sought to "strengthen[]" the regulation's enforcement mechanisms. See 34 N.J.R. 2257(a) (July 1, 2002). Moreover, the inclusion of the catch-all phrase empowering compensation judges to "[t]ake other appropriate case-related action" to enforce their orders underscores the breadth of the remedial aims of the regulation. N.J.A.C. 12:235-3.14(a)6.
Considered in combination, N.J.S.A. 34:15-28.1 and N.J.A.C. 12:235-3.14 are plainly designed to assure that a party's obligations under the compensation laws, and consequent rulings by judges of compensation adjudicating those obligations, must be taken  as they should be  very seriously. If these remedies are exhausted and a party before the Division continues to flout the orders of a judge of compensation, we discern no impediment to a party seeking compliance to bringing an order to show cause in the Law Division for enforcement under R. 4:67-6.[2] The key, however, is for that party to first pursue all avenues for relief available in the Division. Otherwise, the Superior Court would become unnecessarily embroiled in fact-sensitive and dynamic issues *59 involving ongoing medical care for claimants.
Plaintiff concedes that he has not fully availed himself[3] of the various administrative remedies prescribed by N.J.S.A. 34:15-28.1 and N.J.A.C. 12:235-3.14.[4] Instead, he and amicus curiae, an advocacy group for worker rights, mount what is, in essence, a frontal attack on the present statutory and regulatory scheme. They contend that the twenty-five percent enhancement available under N.J.S.A. 34:15-28.1 is woefully insufficient, given the costs of present medical care and the transactional costs of litigating such disputes, and that employers, insurance carriers, and third-party administrators have economic incentives to simply delay treatment and consider the twenty-five percent penalty a modest additional "cost of doing business." Plaintiff and amicus likewise contend that the enforcement measures contained in N.J.A.C. 12:235-3.14 are not adequate to discourage respondents from honoring the directives of judges of compensation in a timely manner.
Although we recognize plaintiff's contentions of systemic failure, we cannot evaluate them fairly on the present record because he simply has not exhausted his administrative remedies under the existing law. The doctrine of exhaustion is sensibly designed "to allow administrative bodies to perform their statutory functions in an orderly manner without preliminary interference from the courts." Paterson Redevelopment Agency v. Schulman, 78 N.J. 378, 386-87, 396 A.2d 573, cert. denied, 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979). The requirement furthers the policy of avoiding unnecessary adjudication. Ibid.
It may well be that plaintiff will be made reasonably whole, and that defendants will have adequate incentives to comply promptly with the judge of compensation's directives, upon his recovery of monetary sanctions and counsel fees that he is entitled to pursue under N.J.A.C. 12:235-3.14 and possibly under N.J.S.A. 34:15-28.1. We cannot decide in the abstract that those remedies will have no teeth. Moreover, any prospective reform of those enforcement measures that may be needed, such as a possible increase in the twenty-five percent statutory penalty under N.J.S.A. 34:15-28.1 for unreasonable delay, or perhaps a further revision of N.J.A.C. 12:235-3.14, is best left to the Legislature and to the Division, respectively.
Plaintiff relies upon our decision in Rothfuss v. Bakers Mut. Ins. Co., 107 N.J.Super. 189, 257 A.2d 733 (App.Div. 1969) to support his attempted cause of action in tort. In that case, we recognized an employee's limited right to maintain a common-law cause of action against an employer's insurance carrier for willful failure to provide medical benefits in a circumstance where it "voluntarily undertook to examine and treat an injured employee by its own doctor. . . ." Id. at 193, 257 A.2d 733. As Judge Waldman aptly noted in his decision, however, Rothfuss is completely *60 distinguishable from the matter at hand.
In Rothfuss, the defendant insurance carrier contended that the plaintiff had not sustained a compensable injury. Thereafter, the carrier engaged a physician to examine the plaintiff. The physician recommended treatment, which the carrier subsequently denied. We found that when the carrier failed to provide medical benefits that its own physician had deemed necessary, it opened the door to a common-law cause of action. Id. at 192-94, 257 A.2d 733.
It should be noted that Rothfuss affirmed the dismissal of two counts, analogous to plaintiff's claims in the instant case, that had charged the defendant with failing to provide prompt and adequate medical treatment. Instead, we found that the proper remedy for such allegations was found solely in the Act. Id. at 193, 257 A.2d 733.
Here, defendant PMA has not undertaken to provide its own physician to plaintiff, as in Rothfuss, but instead has allegedly hindered plaintiff's ability to gain coverage for medical procedures to be performed by third-party doctors. Moreover, we note that the expansive list of enforcement measures in the Division, first enacted in 1997 and now codified at N.J.A.C. 12:235-3.14, did not exist at the time Rothfuss was decided. See 28 N.J.R. 4068 (August 12, 1996) (noting that the regulation was a "new rule," and that, prior to that time, "the rules provide[d] no enforcement mechanism for a Judge of compensation to enforce (his or her) orders.").
More useful guidance comes from Dunlevy v. Kemper Ins. Group, 220 N.J.Super. 464, 532 A.2d 754 (App.Div. 1987), certif. denied, 110 N.J. 176, 540 A.2d 174 (1988). There, a compensation claimant filed an action in Superior Court seeking common-law compensatory and punitive damages for emotional and mental anguish suffered as a result of the termination of her disability benefits by her employer's insurance carrier. We upheld the dismissal of that action, noting that:
The reasoning of Rothfuss is applicable here. The Legislature recognized the need to impose sanctions when the party responsible for providing temporary disability benefits unreasonably or negligently fails to do so. It therefore provided the specific remedy of penalties in N.J.S.A. 34:15-28.1. Had the lawmakers intended common law redress also be available for intentional conduct in failing to provide benefits, it could have readily done so in the manner of N.J.S.A. 34:15-8. The legislative omission persuades us that the lawmakers intended the penalty provisions of N.J.S.A. 34:15-28.1 to be the exclusive remedy.
[Dunlevy, supra, 220 N.J.Super. at 469, 532 A.2d 754.]
Accord Cortes v. Interboro Mut. Indemnity Ins. Co., 232 N.J.Super. 519, 557 A.2d 1019 (App.Div.1988), aff'd, 115 N.J. 190, 557 A.2d 1001 (1989) (reversing a judgment awarding an employee common-law damages on a claim against his employer's insurance company for improper delays in medical treatment); see also Endo Surgi Ctr. v. Liberty Mut. Ins. Co., 391 N.J.Super. 588, 919 A.2d 166 (App.Div.2007) (analogously holding that an insured who is wrongfully denied PIP benefits is only entitled to statutorily-enumerated remedies, and may not obtain recourse via a common-law tort action).
In sum, while we are not unsympathetic to plaintiff's contentions of delay and recalcitrance by his employer's benefits administrator, we are constrained to conclude that he is presently in the wrong forum. The dismissal order of the Law Division is affirmed, reserving to plaintiff the right to *61 exhaust his administrative remedies and to pursue necessary and appropriate judicial review or enforcement thereafter.
Affirmed.
NOTES
[1] The regulation is silent as to whether traditional tort damages for pain and suffering caused by a respondent's recalcitrance in complying with an order are available under this provision, notwithstanding the Act's general exclusivity barring common-law claims. Given our disposition of this case on exhaustion grounds, and the incomplete nature of the present record, we need not consider that hypothetical issue regarding the scope of a "compensatory levy or sanction" under N.J.A.C. 12:235-3.14(b) on the present appeal.
[2] We reject PMA's contention that a petitioner must first obtain the judge of compensation's permission to seek enforcement in the Law Division. We instead regard the referral mechanism of N.J.A.C. 12:235-3.14(a)(5) as an additional, but not exclusive, means for an enforcement application to be presented to the Law Division. The petitioner may bring such an action under R. 4:67-6, without the compensation judge's acquiescence, once administrative remedies have been exhausted.
[3] Indeed, the most recent order from the Division of Compensation supplied to us, dated January 30, 2006, recites that "Respondent [PMA] . . . has fully complied with the [Division's] prior order dated December 22, 2005 . . . [.]" That January 30, 2006 order also directed further treatment, and it is unclear from our record if it occasioned any further need thereafter for enforcement.
[4] We cannot tell for certain from the sparse record whether or not PMA's alleged noncompliance implicates any temporary disability compensation covered by N.J.S.A. 34:15-28.1. If not, then exhaustion still is necessary under N.J.A.C. 12:235-3.14.