12 A.3d 223 (2011)
418 N.J. Super. 79
Wade STANCIL, Plaintiff-Appellant,
v.
ACE USA, Defendant-Respondent.
Docket No. A-1438-09T1.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 2010.
Decided February 1, 2011.
Steven L. Kessel, Red Bank, argued the cause for appellant (Drazin & Warshaw, P.C., attorneys; Mr. Kessel, on the briefs).
Frances Wang Deveney argued the cause for respondent (Marks, O'Neill, O'Brien & Courtney, P.C., attorneys; Ms. Wang Deveney and Melissa J. Brown, Pennsauken, on the brief).
Before Judges LISA, SABATINO and ALVAREZ.
The opinion of the court was delivered by
*224 LISA, P.J.A.D.
In 2007, this court affirmed the dismissal of a Law Division action by a plaintiff, who had suffered work-related injuries, in which he sought from his employer's insurer common law damages for pain, suffering and increased disability. Flick v. PMA Ins. Co., 394 N.J.Super. 605, 607-08, 928 A.2d 54 (App.Div.2007). The plaintiff sought those damages because the insurer had failed to timely comply with orders of the compensation court authorizing certain medical procedures. Ibid. Our affirmance was based on the plaintiff's failure to exhaust available administrative remedies in the compensation court. Id. at 608, 613-14, 928 A.2d 54. However, we expressed our concern about the plaintiff's allegations of delay and recalcitrance by the carrier, id. at 616, 928 A.2d 54, and we questioned the adequacy of the enforcement provisions in the Workers' Compensation Act (Act), N.J.S.A. 34:15-1 to -128, and the corresponding regulations. Id. at 614, 928 A.2d 54. We noted that the then-applicable regulation, N.J.A.C. 12:235-3.14(b) (repealed 2009), was "silent as to whether traditional tort damages for pain and suffering caused by a respondent's recalcitrance in complying with an order are available under this provision, notwithstanding the Act's general exclusivity barring common-law claims." Id. at 612 n. 1, 928 A.2d 54. Because of our disposition on exhaustion grounds, we declined to address "that hypothetical issue regarding the scope of a `compensatory levy or sanction'" under that regulation. Ibid. Finally, we invited the Legislature and the Division of Workers' Compensation (Division) to consider whether any reform of the statutory and regulatory enforcement measures might be appropriate. Id. at 614, 928 A.2d 54.
The case now before us is similar in all material respects to Flick, except that administrative remedies were exhausted here in the compensation court.[1] In this case, the Law Division judge dismissed plaintiff's complaint for failure to state a claim upon which relief can be granted. See R. 4:6-2(e). We are therefore called upon to decide the issue reserved in Flick.
In the aftermath of Flick, decided July 17, 2007, and in response to a series of newspaper articles in April 2008 suggesting the need for reform in situations such as this, the Legislature amended the Act effective October 1, 2008. The Division adopted corresponding regulations effective October 5, 2009. The new provisions confer greater authority, including contempt powers, on compensation judges and, in our view, make clear that Superior Court remedies are limited to summary enforcement proceedings.
This action was filed in the Law Division on April 15, 2009, after the Act was amended. The Law Division judge rendered his decision and issued his order of dismissal on October 19, 2009, which post-dated the amendatory regulations as well. The amendatory provisions control the disposition of this case. See, e.g., Pizzo Mantin Group v. Twp. of Randolph, 137 N.J. 216, 235, 645 A.2d 89 (1994) (holding that under the time-of-decision rule, courts ordinarily apply the statute in effect at the time of the decision in order to effectuate current policy).
*225 We hold that the remedies currently contained in the Act and regulations, which are enforceable in Superior Court under Rule 4:67-6, constitute the sole relief available to an aggrieved claimant arising out of willful noncompliance by an employer or its insurer with an order of the compensation court. The remedies were designed by the Legislature to provide adequate disincentives to such conduct and to empower compensation judges with sufficient authority to sanction the conduct. The legislative scheme in this regard is within the Act's exclusivity framework, thus precluding a common law action against the employer or its insurer. Accordingly, we affirm.

I
Plaintiff suffered a work-related injury on May 14, 1995. His employer's insurer, defendant ACE USA, stipulated that plaintiff's injuries were compensable under the Act. Defendant contends it has paid plaintiff in excess of $567,000 in compensation benefits since 1996.
On September 12, 2007, the compensation judge ordered defendant to pay certain outstanding medical and related expenses as required by prior orders[2] and awarded plaintiff's counsel a $2000 fee for services rendered in procuring such enforcement relief. Defendant persisted in non-payment. On October 29, 2007, the compensation judge conducted a hearing on plaintiff's motion to compel compliance with the orders. Defendant's counsel conceded that defendant knew of its obligations under the orders but had not complied.
The compensation judge found that defendant's defalcation was blatantly willful and clearly intentional. However, he felt constrained because he lacked contempt powers. Although he acknowledged that he had "some ability to impose fines [and] sanctions," he did not do so, although plaintiff requested it. It was his "position... that any attempted imposition to fine, etcetera, beyond awarding [plaintiff's counsel] a [c]ounsel fee, would be arguably beyond [the compensation judge's] authority, and also, to some extent compromise the relief [plaintiff's counsel] would be seeking in the Superior Court." He awarded plaintiff's counsel a fee of $1500, and referred him to the Superior Court for further relief. He concluded by stating: "This is, in my judgment, the complete exhaustion of administrative remedies. There is no further relief, viable relief that you could seek or obtain from this Division."
Plaintiff then filed his Superior Court complaint. He alleged that defendant wantonly refused to comply with orders of the compensation court, resulting in a delay or denial of necessary medical treatment and causing him pain and suffering and a worsening of his medical condition. He asserted that the compensation judge had "referred" defendant's refusal to comply with his orders to the Superior Court for further action, pursuant to the then-existing regulation, N.J.A.C. 12:235-3.14(a)5. He sought compensatory and punitive damages, plus costs, interest, and attorney's fees.
The trial court granted defendant's Rule 4:6-2(e) motion. He found that, unlike in Flick, plaintiff had exhausted his administrative remedies and the matter was properly before the Superior Court. He further found, however, that amendments to the enforcement scheme enacted after *226 Flick made it clear that the remedies specified in the Act and regulations were exclusive, no common law claim was permitted, and the role of the Superior Court was limited to enforcement proceedings. He therefore dismissed the complaint with prejudice.

II
The compensation court proceedings concluded on October 29, 2007. Until that time, the enforcement provisions of the Act and regulations were the same as we described in Flick. If an employer or its carrier unreasonably delayed or refused to pay temporary disability benefits, it could be assessed "an additional amount of 25% of the amounts then due plus any reasonable legal fees incurred by the petitioner as a result of and in relation to such delays or refusals." N.J.S.A. 34:15-28.1. The dispute here, however, does not pertain to temporary disability benefits.
By former regulation, for an "unreasonable failure to comply" with any order, the compensation judge was authorized to impose various remedies, which included ordering attorney's fees and costs, and "refer[ring] matters for other administrative, civil or criminal proceedings." N.J.A.C. 12:235-3.14(a)4, 5 (repealed 2009). The regulation also allowed a party or the compensation court on its own motion to move for enforcement of an order. N.J.A.C. 12:235-3.14(b) (repealed 2009). Under this provision, the noncompliant party was required to explain "the reasons for any noncompliance and manner and time periods to ensure compliance with the order at issue." Ibid. Then, before taking any action under paragraph (a), the compensation judge would hold a hearing to determine "the appropriateness of the action and the reasonableness of any compensatory levy or sanction." Ibid. Finally, "compensatory levy and sanction" was defined as "an amount awarded to compensate for actual losses, including, but not limited to, interest on monies due a party as well as attorney's fees and administrative costs to the Division." N.J.A.C. 12:235-3.14(d) (repealed 2009).
In Flick, we concluded that the provisions of N.J.S.A. 34:15-28.1 and the then-existing N.J.A.C. 12:235-3.14 (including those we have described here and others) were plainly designed to assure compliance with orders of compensation judges. Flick, supra, 394 N.J.Super. at 613, 928 A.2d 54. We held that, after exhausting those remedies, an aggrieved party could bring an order to show cause in the Law Division under Rule 4:67-6. Ibid.
In the case before us, the compensation judge referred the matter to the Superior Court, pursuant to N.J.A.C. 12:235-3.14(a)5 (repealed 2009), for "other ... civil ... proceedings." Plaintiff argues that the authorized nature of those proceedings includes a common law tort action. We need not squarely address the issue framed in that manner because N.J.A.C. 12:235-3.14 has been repealed and replaced by a new section, N.J.A.C. 12:235-3.16, effective October 5, 2009. 41 N.J.R. 3807(a) (October 5, 2009). The new regulation followed the legislative enactment of new enforcement provisions in the Act, codified at N.J.S.A. 34:15-28.2 to -28.4. L. 2008, c. 93 §§ 1-3, effective October 1, 2008.
That new section provides:
If any employer, insurer, claimant, or counsel to the employer, insurer, or claimant, or other party to a claim for compensation, fails to comply with any order of a judge of compensation or with the requirements of any statute or regulation regarding workers' compensation, a judge of compensation may, in addition to any other remedies provided by law:

*227 a. Impose costs, simple interest on any moneys due, an additional assessment not to exceed 25% of moneys due for unreasonable payment delay, and reasonable legal fees, to enforce the order, statute or regulation;
b. Impose additional fines and other penalties on parties or counsel in an amount not exceeding $5,000 for unreasonable delay, with the proceeds of the penalties paid into the Second Injury Fund;
c. Close proofs, dismiss a claim or suppress a defense as to any party;
d. Exclude evidence or witnesses;
e. Hold a separate hearing on any issue of contempt and, upon a finding of contempt by the judge of compensation, the successful party or the judge of compensation may file a motion with the Superior Court for enforcement of those contempt proceedings; and
f. Take other actions deemed appropriate by the judge of compensation with respect to the claim.
[N.J.S.A. 34:15-28.2 (emphasis added).]
Subsection (e) of this new section conferred contempt authority on compensation judges and specified that, upon a finding of contempt, a motion for enforcement could be made in Superior Court. The legislative history leading up to the formulation of subsection (e) illuminates its intended meaning.
After Flick was decided in April 2007, a series of newspaper articles published in the Star-Ledger in April 2008 concluded that the workers' compensation system was in need of reform. See, e.g., Dunstan McNichol & John P. Martin, Politics Tangle a Safety Net for Workers Hurt on Job, Star-Ledger (Newark, N.J.), Apr. 7, 2008, at News, 1; John P. Martin, This Wasn't Supposed to Happen, Star-Ledger (Newark, N.J.), Apr. 7, 2008, at News, 5. The newspaper series concluded that, among other reforms that were needed, "[c]omp judges must have better tools to discipline insurance companies or others who deliberately drag out cases or payments. Judges now can do little more than add interest payments to an insurer's bill. Fines and other sanctions are needed to bring recalcitrant payers into line." Editorial, Jersey Must Do Better By Injured Workers, Star-Ledger (Newark, N.J.), Apr. 13, 2008, at Perspective, 2.
On May 5, 2008, the Senate Labor Committee conducted a hearing on the subject. See Senate Labor Committee, Examination of the Workers' Compensation System in New Jersey (May 5, 2008). A common theme throughout the testimony of numerous interested parties was that compensation judges needed more enforcement sanctions available to them for circumstances in which an insurance carrier flouts an order and refuses to pay for ordered treatment. See, e.g., id. at 6x (recommendation of David J. Socolow, Commissioner, New Jersey Department of Labor and Workforce Development, that "[t]he Legislature should amend the statute to provide additional statutory sanctions and enforcement powers for workers' compensation judges"); id. at 45x-46x (recommendation of Association of Trial Lawyers of America-New Jersey that compensation judges should be given the ability to levy sanctions, prejudgment interest, and counsel fees against insurance carriers who "cho[o]se to disregard the order of a compensation judge").
Shortly after the hearing, the Senate introduced a bill on May 22, 2008, in which the section that would eventually become subsection (e) of N.J.S.A. 34:15-28.2 provided that a compensation judge may:
Refer matters to other administrative, civil or criminal proceedings including *228 referrals to the Superior Court for contempt proceedings.
[Senate No. 1913 (May 22, 2008).]
This provision was similar to the then-existing enforcement regulation that authorized compensation judges to "[r]efer matters for other administrative, civil or criminal proceedings." N.J.A.C. 12:235-3.14(a)5 (repealed 2009).
However, on June 5, 2008, the Senate Labor Committee amended the introduced language in subsection (e) to instead "authorize a judge of compensation to hold a separate hearing on any issue of contempt, and upon a finding of contempt, the successful party may file a motion with Superior Court for enforcement." Senate Labor Committee Statement to Senate No. 1913 (June 5, 2008) at 2.
The following week, the Assembly introduced a bill which tracked the original Senate bill (without the amendments), including the language authorizing a compensation judge to "[r]efer" the matter for other administrative, civil, or criminal proceedings. Assembly No. 2966 (June 12, 2008) at 2. However, the Assembly Labor Committee explicitly rejected this broad language and replaced it with the narrower language currently contained in N.J.S.A. 34:15-28.2. That language does not authorize a compensation judge to "refer" the matter for "other civil proceedings." It merely authorizes him or her to hold a hearing on the issue of contempt, after which the compensation judge or aggrieved party "may file a motion with the Superior Court for enforcement of those contempt proceedings." The Assembly Labor Committee stated:
This amendment is more specific to the issue of contempt and replaces broader language regarding the judge's authority to refer matters to other tribunals.
[Assembly Labor Committee Statement to Assembly No. 2966 (June 12, 2008) at 1 (emphasis added).]
This series of events makes clear that the Legislature added N.J.S.A. 34:15-28.2 to the statutory scheme to address circumstances in which insurance carriers flout compensation judges' orders and refuse to pay for employees' medical expenses. It is equally clear that in considering the remedy for this problem, the Legislature considered and expressly rejected the broader remedy of referring the matter to the Superior Court for other administrative, civil, and criminal proceedings. Instead, the Legislature replaced that proposed provision with the enacted provision relating to contempt proceedings.
Amendments made to a proposed enactment during the legislative process often carry great weight in determining the meaning of the provision in its final form. See Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 331-32, 9 A.3d 882 (2010) (Rabner, C.J., concurring) (finding instructive of the Framers' intent that early drafts of the 1947 Constitution included language limiting temporary assignments to the Supreme Court to situations in which it was "necessary to make the quorum," but later drafts, and the Constitution as it was adopted, rejected that language and replaced it with the broader "[w]hen necessary" language, and commenting that once the rejected language was removed, "[w]e cannot add it back.") The amendments and accompanying statements make clear that the Legislature consciously chose to limit Superior Court proceedings to enforcement. To permit the cause of action plaintiff seeks would constitute a judicial undoing of a considered legislative judgment, something courts should avoid. See Voss v. Tranquilino, 413 N.J.Super. 82, 90-92, 992 A.2d 829 *229 (App.Div.), leave to appeal granted, 202 N.J. 343, 997 A.2d 229 (2010).
Authorizing surcharges of up to twenty-five percent and fines of up to $5000 were new provisions the Legislature added to incentivize insurers to timely comply with compensation court orders. N.J.S.A. 34:15-28.2a, b (L. 2008, c. 93, § 1). Another new provision provided insurers with further incentive to comply with compensation court orders: "Any fine, penalty, assessment, or cost, imposed on an insurer pursuant to [N.J.S.A. 34:15-28.2], shall not be included in the expense base of that insurer for the purpose of determining rates." N.J.S.A. 34:15-28.3 (L. 2008, c. 93, § 2). After enactment of the statutory amendments, the Division[3] proposed new rules on May 4, 2009, which would repeal N.J.A.C. 12:235-3.14, and replace it with a new enforcement section, to be designated as N.J.A.C. 12:235-3.16. 41 N.J.R. 1935(a) (May 4, 2009). The new enforcement rule, which was later adopted in the form proposed, see 41 N.J.R. 3807(a) (Oct. 5, 2009), conformed to the provisions of the newly enacted N.J.S.A. 34:15-28.2. It provides:
§ 12:235-3.16 Enforcement
(a) A party may, by written motion pursuant to N.J.A.C. 12:235-3.5(a) and (b), move against an employer, insurance carrier, petitioner, case attorney or any other party to a claim petition for enforcement of any court order or for the enforcement of the requirements of the workers' compensation statute or rules.
(b) The motion under (a) above shall identify the order, statute or regulation sought to be enforced.
(c) The party against whom the motion has been brought shall file a written response to the motion within 14 calendar days of the notice of motion.
(d) The response under (c) above shall include the reasons for any noncompliance and the manner and time period to ensure compliance.
(e) Any time after the 14-day period to respond under (c) above has elapsed and on notice to the parties, the judge shall hold a hearing on the motion.
(f) A judge on his or her own motion may at any time, upon notice to the affected parties, move to enforce a court order or to enforce the requirements of the workers' compensation statute or rules.
(g) Prior to ruling on a motion under
(f) above, the judge shall provide the parties an opportunity to respond to the motion and to be heard on the record.
(h) Upon a finding by a judge of noncompliance with a court order or the workers' compensation statute or rules, the judge, in addition to any other remedy provided by law, may take any or all of the following actions:
1. Impose costs and simple interest on any monies due.
i. The judge may impose an additional assessment not to exceed 25 percent on any moneys due if the judge finds the payment delay to be unreasonable;
2. Levy fines or other penalties on parties or case attorneys in an amount not to exceed $5,000 for unreasonable delay or continued noncompliance.
i. A fine shall be imposed by the judge as a form of pecuniary punishment.
ii. A penalty shall be imposed by the judge to reimburse the Division's administrative costs.
iii. The proceeds under this paragraph shall be paid into the Second Injury Fund;

*230 3. Close proofs, dismiss a claim or suppress a defense as to any party;
4. Exclude evidence or witnesses;
5. Take other appropriate case-related action to ensure compliance; and/or
6. Allow a reasonable counsel fee to a prevailing party, where supported by an affidavit of services.
(i) Upon a finding by a judge of noncompliance by a party with a court order or the workers' compensation law or rules, the judge, in addition to any other remedy provided by law, may hold a separate hearing on the issue of contempt.
(j) Following a hearing under (i) above and upon a finding by the judge of contempt, the successful party in the contempt hearing or the judge may file a motion with the Superior Court for contempt action.
(k) Any fine, penalty, assessment or cost imposed by a judge under this section shall be paid by the entity or party found to be in noncompliance and shall not be included in the expense base of an insurance carrier for the purpose of determining rates or as a reimbursement or case expense.
[N.J.A.C. 12:235-3.16.]
In its rule proposal, the Division stated that replacement of the old enforcement rule with the new one
would ensure that injured workers and other parties have an efficient method to enforce orders of the Workers' Compensation court, as well as the Workers' Compensation law and rules. The possibility of receiving the sanctions set forth in the proposed new rule (which sanctions cannot be utilized by insurance carriers to affect employer insurance rates) would serve as a disincentive to the untimely payment of benefits, as well as to failure to comply with orders of the Workers' Compensation court, the Workers' Compensation law and N.J.A.C. 12:235 (the Workers' Compensation rules).
[41 N.J.R. 1935(a) (May 4, 2009).]
Critical to our analysis, in addition to authorizing $5000 fines and twenty-five percent surcharges on overdue payments, and excluding sanction payments from an insurer's expense base in determining rates, the new rule also added provisions pertaining to contempt powers and Superior Court proceedings. N.J.A.C. 12:235-3.16(i), (j). This replaced the more general provision in the old rule authorizing compensation judges to "[r]efer matters for other administrative, civil or criminal proceedings." N.J.A.C. 12:235-3.14(a)5 (repealed 2009).
Under the new framework, N.J.S.A. 34:15-28.2 and N.J.A.C. 12:235-3.16 specifically address plaintiff's situation, namely one in which an insurer "fails to comply with any order of a judge of compensation." N.J.S.A. 34:15-28.2. Specific and clearly defined procedures and remedies are now provided. They were developed by the Legislature and Division to address and reform shortcomings in the previous scheme. The general provision authorizing referral to Superior Court for "other... civil ... proceedings," which could conceivably be interpreted as authorizing a common law action, has been eliminated.
These changes persuade us that the beefed-up enforcement measures were intended by the Legislature to fall within the Act's exclusivity scheme. In considering and enacting the reform measures, the Legislature was undoubtedly aware of the concerns we had recently expressed in Flick. If authorization of a common law action was intended as a remedy for an insurer's willful noncompliance with a compensation court order, we think the Legislature would have said so. Instead, it *231 authorized stricter sanctions and prescribed a clear line of authority for enforcement.

III
We reject plaintiff's argument that willful noncompliance with an order should fall within the intentional wrong exception of N.J.S.A. 34:15-8. That exception has been consistently applied only to conduct by an employer or co-employee in the workplace. See, e.g., Laidlow v. Hariton Mach. Co., Inc., 170 N.J. 602, 606, 790 A.2d 884 (2002) ("The described limitations involve intentional wrongful conduct committed either by the worker or the employer."); Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 184-86, 501 A.2d 505 (1985) (holding that intentional wrong exception applies to co-employees and employer); Dunlevy v. Kemper Ins. Group, 220 N.J.Super. 464, 469-70, 532 A.2d 754 (App.Div.1987) ("Millison dealt with an intentional tort of an employer in the workplace. It did not deal with the intentional wrongful conduct of a compensation carrier in refusing to provide required benefits. We find the distinction controlling."), certif. denied, 110 N.J. 176, 540 A.2d 174 (1988).
It is even clearer now that the remedy for such conduct is expressly provided for in the statute and regulation. To allow an action such as this would run contrary to the foundational principle underlying the Act, which immunizes defendants from common law claims in exchange for adjudication of claims under a comprehensive regulatory framework. Wilson v. Faull, 27 N.J. 105, 116, 141 A.2d 768 (1958).
Our conclusion comports with the majority rule. 6 Arthur Larson, Larson's Workers' Compensation Law, § 104.05[3] at 104-30 (2009). Most courts have reasoned that "the presence in the statute of an administrative penalty for the very conduct on which the tort suit is based ... evidences a legislative intent that the remedy for delay in payments, even vexatious delay, shall remain within the system in the form of some kind of penalty." Id. at 104-35 (footnote omitted). Although some claimants might not be fully compensated by penalties that in some cases may be inadequate, "this does not, within the overall nature of the compensation concept, make them invalid. At most, it may be cause to apply to the legislature for a more suitable penalty level." Ibid. (footnote omitted).
Finally, we find unpersuasive plaintiff's reliance on Rothfuss v. Bakers Mutual Insurance Co. of New York, 107 N.J.Super. 189, 257 A.2d 733 (App.Div.1969). That case is limited to allowing common law actions in circumstances in which the insurer undertook to treat an injured employee with a doctor employed by the insurer and then allegedly failed to provide appropriate medical care. Id. at 192-93, 257 A.2d 733; see also Mager v. United Hospitals of Newark, 88 N.J.Super. 421, 426-28, 212 A.2d 664 (App.Div.1965) (holding that compensation carrier operating its own clinic for treatment of injured workers was subject to a common law action for alleged negligent treatment), aff'd o.b., 46 N.J. 398, 217 A.2d 325 (1966). The rationale underlying the decisions in Rothfuss and Mager was "that the jurisdiction of our law courts was posited on the carriers' undertaking to treat, a duty not imposed on them by the Workers' Compensation Act." Cortes v. Interboro Mut. Indem. Ins. Co., 232 N.J.Super. 519, 523, 557 A.2d 1019 (App.Div.1988), aff'd o.b., 115 N.J. 190, 557 A.2d 1001 (1989). That is not the case here. Defendant did not undertake to treat plaintiff.
In support of his reliance on Rothfuss, plaintiff points to the Supreme Court's recent comment, referring to Rothfuss, "that *232 an insurer's affirmative acts can cause injuries that are not compensable solely within the workers' compensation scheme." Basil v. Wolf, 193 N.J. 38, 59 n. 10, 935 A.2d 1154 (2007). We are unpersuaded by plaintiff's interpretation of that comment. The comment does not expand the narrow holding in Rothfuss. To the contrary, Basil restates and reinforces the holdings of Rothfuss and Mager.

IV
We therefore affirm the order dismissing plaintiff's complaint. Although the dismissal was with prejudice, plaintiff is not precluded from returning to the compensation court to seek the enumerated remedies authorized under the new regime, and, if a new Superior Court action is thereafter necessary for enforcement, such action would not be precluded. Therefore, our affirmance is without prejudice to plaintiff's right to move in a subsequent Superior Court action, should that be necessary, for enforcement of any contempt order that might be issued in the compensation court.
Affirmed.
NOTES
[1] Like the Law Division judge, we accept for purposes of our analysis that administrative remedies were exhausted. As we will discuss, the judge of compensation found willful disobedience to his orders and those of his predecessor in the case, considered (although he did not impose) available sanctions, noted his lack of contempt powers, declared that administrative remedies had been exhausted, and referred the petitioner to the Superior Court for further relief.
[2] The outstanding items were for plaintiff's treating psychiatrist ($3850), prescription drugs ($108.82), rehabilitation facility ($575), and transportation service (because plaintiff was not allowed to drive due to his injuries) ($7562).
[3] The rules are actually promulgated by the New Jersey Department of Labor and Workforce Development, Division of Workers' Compensation.