48 A.3d 991

WADE STANCIL v. ACE USA.

Argued Mar. 26, 2012—Decided August 1, 2012.

*Steven L. Kessel* argued the cause for appellant (*Drazin & Warshaw*, attorneys).

*Frances Wang Deveney* argued the cause for respondent (*Marks, O'Neill, O'Brien & Courtney*, attorneys; *Ms. Wang Deveney* and *Melissa J. Brown*, on the brief).

*Richard J. Williams, Jr.*, submitted a brief on behalf of amici curiae American Insurance Association, Property Casualty Insurers Association of America, National Association of Mutual Insurance Companies, and The Insurance Council of New Jersey (*McElroy, Deutsch, Mulvaney & Carpenter*, attorneys; *Mr. Williams and Michael J. Marone*, of counsel; *Mr. Williams* and *Katherine E. Howard*, on the brief).

*Alan T. Friedman* submitted a brief on behalf of amicus curiae New Jersey Association for Justice (*Bagolie–Friedman*, attorneys).

HOENS, Justice, delivered the opinion of the Court.

In this matter, we are asked to create a common law cause of action that would permit an injured employee, who is separately entitled to receive workers' compensation benefits, to sue his employer's compensation carrier directly for pain and suffering when it results from the carrier's delay in payment for medical treatment, prescriptions, or related services. We decline this invitation to create a new cause of action for three essential reasons.

First, the workers' compensation system has been carefully constructed by our Legislature in a manner that serves to protect the rights of injured employees to receive prompt treatment and compensation. That system rests on the Legislature's decision to ensure that employees will be compensated by eliminating, except in precisely defined circumstances, their right to pursue litigation in the Superior Court. Seen in that light, were this Court to create a common law remedy in the nature of a claim for pain and suffering arising from a workplace injury, we would be authorizing

an avenue for relief that would both conflict with and significantly undermine the system chosen by our Legislature. We therefore decline, as both unnecessary and unwise, the invitation to create such a remedy.

Second, we have been asked to create this new cause of action to address an alleged shortcoming in the workers' compensation system that our Legislature has already addressed through its recent amendments to the governing statute. The stated objective of the request to this Court is to arm employees with an enforcement tool through which they may combat the perceived evil of recalcitrant compensation carriers that intentionally delay making payments that the compensation court has ordered. Acceding to the request that we allow employees to respond in this manner to any such defiance by carriers, however, would directly conflict with the statutory framework, because our Legislature has chosen a different mechanism as its solution to this precise problem. The Legislature responded to the recalcitrant carrier problem by amending the statute to authorize courts of compensation to enforce their orders through contempt findings, which could then be enforced in the Superior Court. In doing so, however, the Legislature specifically deleted a provision, which had been included in an earlier version of the bill, that would have given the courts of compensation broader permission to authorize a resort to the Superior Court. We discern in that choice a clear direction from our Legislature concerning remedies to which we defer.

Third, the remedy that we are asked to create would be at odds not only with our longstanding jurisprudence relating to rights and remedies against workers' compensation carriers, but would, in our view, soon replace the compensation mechanism designed by our Legislature with a more general tort recovery system. Although we have previously recognized that in some circumstances an injured employee may pursue a direct cause of action against a workers' compensation carrier, that remedy arose only because, in those unique circumstances, the carrier undertook to

provide treatment directly. In contrast, the cause of action we are asked to create in this appeal would not address an unusual and voluntary choice by the insurer. Instead, it would subject all carriers to the threat of a direct right of action at law that would so overshadow our system of workers' compensation that the Legislature's will would be thwarted.

Our statutory workers' compensation system has stood as a model of a fair and efficient mechanism for compensation of injured workers for nearly a century. To the extent that it has in recent years been criticized for shortcomings, including the existence of recalcitrant carriers, our Legislature has responded swiftly and decisively. For all of these reasons, we decline the invitation to create a common law remedy.

## I.

Plaintiff Wade Stancil suffered a work-related injury in 1995 while employed by Orient Originals. As a result of that injury, plaintiff received workers' compensation benefits from his employer's compensation carrier, defendant ACE USA.[1] In July 2006, following a trial on the merits before the court of compensation, plaintiff was awarded an order concluding that he was totally disabled, by which time he had received temporary benefits from defendant that it asserts exceeded $560,000.

In 2007, plaintiff filed a motion in which he sought an order compelling defendant to pay certain outstanding bills for medical, prescription and transportation services. In the context of the hearing on plaintiff's motion to compel, the court of compensation commented that defendant had a history of prior failures to make payments when ordered to do so. As a part of its September 12, 2007, order granting plaintiff's request that the specific bills in

---

[1] Although the technical name of the compensation carrier is Atlantic Employers Insurance Company, defendant was improperly named as ACE USA. That designation has been used throughout this litigation and we will continue to refer to defendant by that name solely for the sake of continuity.

question be paid, the court warned against any further violation of the order to pay and awarded plaintiff a $2,000 counsel fee.

On October 29, 2007, the parties returned to the compensation court for a further proceeding relating to the disputed bills. The court, after finding that the bills identified in the September 12, 2007, order remained unpaid, found that defendant's failure to make payment was a violation of that order that was both willful and intentional. Based on those findings, the court of compensation issued a further order to compel defendant to make immediate payment and awarded plaintiff an additional counsel fee. In issuing its order, the court commented on the extent of its enforcement authority and on the relatively limited means available to it to ensure that workers' compensation carriers would comply with its orders. In particular, the court pointed out that it lacked the power to enforce its orders through contempt proceedings and, finding that plaintiff had exhausted his administrative remedies, suggested that he seek further relief in Superior Court.

The record does not reflect whether the bills that were the focus of the September and October 2007 orders were then paid, but we presume that they were because plaintiff did not return to the compensation court seeking further enforcement. Instead, the record reveals that plaintiff underwent additional surgery and psychiatric treatment in 2008 that his physician attributed to an earlier delay in treatment and which, in turn, the physician blamed on the carrier's delay in making payment to treatment providers. Although the record does not reflect whether plaintiff pursued his available remedies in the workers' compensation court to secure payment for the treatment he received in 2008, there is no suggestion in the record before this Court that the health care providers were not compensated or that plaintiff has been required to undertake any further efforts to secure payment for medical bills. On the contrary, the record includes a certification that all bills relating to treatment that had been submitted to defendant were paid with the exception of bills for treatment in

2009 that the carrier contested as being not causally connected to the workplace injury.

On April 15, 2009, plaintiff filed his complaint in Superior Court in this matter. The complaint asserted that defendant had required plaintiff to undergo medical examinations by physicians of its choosing as part of its investigation into his claimed injuries, had rejected recommendations of those physicians, and had refused to authorize that recommended medical care for plaintiff. It further averred that as a result of defendant's refusal to authorize treatment and make benefits available to plaintiff, he had been required to obtain orders from the compensation court with which defendant had failed to comply. Plaintiff asserted that defendant's continued non-compliance then resulted in the compensation court's order referring the matter to the Superior Court for action pursuant to *N.J.A.C.* 12:235–3.14(a)(5). Further, plaintiff contended that defendant's failure to authorize needed treatment had caused him to sustain "unnecessary pain and suffering in addition to what he would have otherwise experienced from his injuries and ... a worsening of his medical condition, and to incur expenses which should have been paid" for by defendant. Asserting that defendant had either failed to act in good faith or had acted in bad faith, the complaint demanded that plaintiff be awarded compensatory and punitive damages.

Defendant filed a motion to dismiss the complaint in lieu of answer, arguing that the complaint failed to state a claim upon which relief could be granted. *See R.* 4:6–2(e). That motion was based on defendant's argument that the Workers' Compensation Act, *N.J.S.A.* 34:15–1 to –142 (the Act), is the exclusive remedy for the claims asserted in the complaint and that therefore neither compensatory nor punitive damages may be awarded for the claims plaintiff had asserted. The trial court granted defendant's motion, setting forth its reasoning in its October 19, 2009, written opinion. In summary, the court analyzed the impact of then-recently adopted amendments to the Act on the historical remedies available to injured employees and concluded that the Legis-

lature had foreclosed resort to the Superior Court for the kind of tort-based relief demanded by plaintiff.

The Appellate Division affirmed the trial court's decision in a published opinion. *Stancil v. ACE USA,* 418 *N.J.Super.* 79, 12 *A.*3d 223 (App.Div.2011). In part, the appellate panel distinguished its own earlier decision that had suggested the possibility of a resort to the Superior Court under similar circumstances, *id.* at 80–82, 12 *A.*3d 223 (discussing and distinguishing *Flick v. PMA Ins. Co.,* 394 *N.J.Super.* 605, 928 *A.*2d 54 (App.Div.2007)), concluding that the amendments enacted by the Legislature in the interim both governed plaintiff's claims and foreclosed them, *id.* at 87–88, 12 *A.*3d 223. In addition, the panel rejected plaintiff's alternative argument that the carrier's willful disregard of the orders of the compensation court sufficed to meet the statute's intentional wrong exception. *Id.* at 91–92, 12 *A.*3d 223 (rejecting assertion that intentional act exception found in *N.J.S.A.* 34:15–8 applied to act of carrier); *see Dunlevy v. Kemper Ins. Group,* 220 *N.J.Super.* 464, 469–70, 532 *A.*2d 754 (App.Div.1987) (distinguishing employer's intentional workplace conduct from conduct of employer's carrier in refusing to provide medical benefits), *certif. denied,* 110 *N.J.* 176, 540 *A.*2d 174 (1988).

We granted certification, limited to

whether—and without regard to the intentional-conduct exception provided for in the Workers' Compensation Act, *N.J.S.A.* 34:15–8—an employee who suffered a work-related injury has a common-law cause of action for damages against a workers' compensation carrier for its willful failure to comply with court orders compelling it to provide medical treatment when the delay or denial of treatment causes a worsening of the employee's medical condition and/or pain and suffering.

[*Stancil v. Ace USA,* 207 *N.J.* 66, 23 *A.*3d 338 (2011).]

We thereafter granted leave to American Insurance Association, Property Casualty Insurers Association of America, and National Association of Mutual Insurance Companies and to New Jersey Association for Justice to participate as amici curiae.

## II.

Plaintiff urges this Court to reverse the judgment of the Appellate Division and to recognize the existence of a civil cause of

action for pain and suffering as a remedy for plaintiffs who have been harmed by a workers' compensation carrier's intentional refusal to comply with orders of the compensation court. He argues [2] that the Appellate Division erred in its substantive analysis of the statutory amendments enacted by the Legislature in 2008, as well as in its conclusion that those amendments apply to his claim. Plaintiff also asserts that the Legislature's efforts to address recalcitrant insurers through the workers' compensation statute and its 2008 amendments are ineffective, thus requiring this Court's intervention as a matter of public policy. He therefore urges this Court to create a stronger incentive for carriers to comply with orders entered by courts of compensation through the recognition of a cause of action for pain and suffering and for punitive damages similar to the one asserted in the complaint he filed.

Defendant argues that the Act remains the exclusive remedy for claims arising out of any workplace injury, pointing out that the concerns plaintiff expresses about ensuring compliance with orders issued by the compensation court were all raised before and considered by the Legislature in connection with the statutory amendments it enacted in 2008. Defendant asserts that to the extent that there might have been a basis for the compensation court to refer a matter for further consideration by the Superior Court, the Legislature rejected that approach in favor of creating a contempt remedy in the compensation court. In addition, defendant contends that the claims plaintiff has raised concerning aggravated or exacerbated injuries are all cognizable in the compensation court and that his failure to pursue those remedies

---

[2] Because of our limited grant of certification, we will recite only the arguments raised by the parties that are germane to our analysis. As our certified question suggests, however, plaintiff had argued that the Act's intentional tort exception, *N.J.S.A.* 34:15-8, would permit relief outside of the Act for an insurer's willful failure to comply with the compensation court's order. Neither the trial court nor the appellate panel, *Stancil, supra*, 418 *N.J.Super.* at 91–92, 12 *A.3d* 223 found any merit in this argument, and we deemed it unworthy of certification.

should not entitle him to the creation of an entirely new cause of action in the Superior Court.

The American Insurance Association, Property Casualty Insurers Association of America, and National Association of Mutual Insurance Companies joined in submitting a brief as amici curiae. Consistent with the position advanced by defendant, they argue that the new statutory provision enacted as part of the 2008 amendments to the Act, *N.J.S.A.* 34:15–28.2, precludes a common law tort action against an insurer for willful failure to comply with an order of the court of compensation.[3] They assert that the Legislature enacted a comprehensive scheme to address the concerns that previously had been raised before the Appellate Division, *see Flick, supra,* 394 *N.J.Super.* at 613–14, 928 *A.*2d 54 (commenting on plaintiff's description of purported systematic deficiencies), and that by enumerating in the statute the remedies that were permitted, the Legislature effectively denied injured workers the ability to file common law tort claims.

Amici also assert that public policy considerations support the Legislature's decision to limit the remedies available to those provided in the Act. They warn that creating a remedy in tort would have a "devastating impact" on the workers' compensation system, by "caus[ing] confusion and likely delay[ing] the final resolution" of an injured worker's claim. Moreover, they argue that creating such a remedy would lead to inconsistent rulings from different courts and would authorize double recovery of benefits because petitioners would be allowed "to convert every dispute related to their pending workers' compensation claim into a separate civil tort action."

Amicus New Jersey Association for Justice (NJAJ), raising arguments in support of plaintiff's position, asserts that defendant

---

[3] As Amici correctly point out, the order that has given rise to this appeal was issued by the Division of Workers' Compensation, which is the technical name of the administrative agency charged with responsibility under the Act. For purposes of clarity, however, we utilize the traditional references to the "court of compensation."

should not be permitted to claim the benefit of the exclusivity clause of the Act because it egregiously failed to provide medical benefits to the injured worker. Recognizing that the Act represents a trade-off through which employees lost the right to sue in exchange for automatic recovery of certain benefits, including medical treatment, amicus NJAJ argues that when an insurer fails to uphold its end of that bargain, it should not be allowed to benefit from the statute's protections, but instead should be required to answer for damages in Superior Court.

Amicus NJAJ also argues that the compensation court has the authority to refer a petitioner to the Superior Court to pursue further relief if the remedies in the compensation court have been exhausted, concluding that the phrase included in the governing statute "[t]ake other actions deemed appropriate by the judge of compensation with respect to the claim," *N.J.S.A.* 34:15–28.2(f), would so permit. By extension, amicus NJAJ asserts that the compensation court's findings in this case should suffice to permit plaintiff's claim in the Law Division to proceed.

## III.

We have frequently described the Act as

a historic trade-off whereby employees relinquished their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffered injuries by accident arising out of and in the course of employment. Thus the quid pro quo anticipated by the Act was that employees would receive assurance of relatively swift and certain compensation payments, but would relinquish their rights to pursue a potentially larger recovery in a common-law action.

[*Millison v. E.I. du Pont de Nemours & Co.*, 101 *N.J.* 161, 174, 501 *A.2d* 505 (1985); accord *Van Dunk v. Reckson Assocs. Realty Corp.*, 210 *N.J.* 449, 45 *A.3d* 965 (2012); *Charles Beseler Co. v. O'Gorman & Young*, 188 *N.J.* 542, 546, 911 *A.2d* 47 (2006); *Laidlow v. Hariton Mach. Co., Inc.*, 170 *N.J.* 602, 605, 790 *A.2d* 884 (2002).]

Through its explicit exclusivity provision, *N.J.S.A.* 34:15–8, the Act has operated to create precisely the sort of system that its drafters envisioned. We have recognized that there are circumstances that meet the Act's intentional wrong exception, thereby entitling an injured worker to proceed in Superior Court. *Milli-*

son, supra, 101 N.J. at 185, 501 A.2d 505; see, e.g., Crippen v. Cent. Jersey Concrete Pipe Co., 176 N.J. 397, 409–11, 823 A.2d 789 (2003); Mull v. Zeta Cons. Prod., 176 N.J. 385, 392–93, 823 A.2d 782 (2003); Laidlow, supra, 170 N.J. at 622–23, 790 A.2d 884. In rare circumstances, we have also recognized a limited exception to the Act's exclusivity protections if the compensation carrier has performed services for the injured worker that fell outside of the mandated coverage. See Basil v. Wolf, 193 N.J. 38, 58–62, 935 A.2d 1154 (2007) (rejecting argument that insurer's exercise of reasonable treatment protocols exposes it to direct liability to injured employee); Mager v. United Hosp. of Newark, 88 N.J.Super. 421, 427, 212 A.2d 664 (App.Div.1965) (concluding that carrier that undertook to perform medical services through operation of clinic could be independently liable to employee receiving negligent treatment there), aff'd o.b., 46 N.J. 398, 217 A.2d 325 (1966); see also Rothfuss v. Bakers Mutual Ins. Co. of New York, 107 N.J.Super. 189, 193, 257 A.2d 733 (App.Div.1969) (recognizing limited common law action against carrier that undertook to examine and diagnose but failed to treat plaintiff). However, consistent with the statutory mandate, those exceptions have been narrowly defined and carefully tailored to adhere to the Legislature's clear preference for resolution of work-related injuries in the courts of compensation.

Even so, the workers' compensation system has not escaped criticism. Most notable for purposes of this appeal is that, at the time when the orders on which plaintiff based his complaint were entered, the ability of the courts of compensation to ensure compliance with their orders had been criticized by litigants in our appellate court. See Flick, supra, 394 N.J.Super. at 614, 928 A.2d 54. The panel in Flick, confronted with factual assertions about a compensation carrier that ignored and rejected treatment recommendations, and that thereafter refused to comply with court orders to compel payment of benefits, id. at 608–09, 928 A.2d 54, declined to permit the injured worker to pursue a separate litigation in Superior Court for pain and suffering. The panel reached its decision by reasoning that plaintiff had failed to

exhaust the remedies available in the court of compensation. *Id.* at 613–14, 928 *A.*2d 54. In doing so, however, the panel commented on plaintiff's "contentions of systemic failure" and assertions about the inadequacy of remedies for injured workers faced with recalcitrant insurers, observing that "perhaps a further revision of [the regulations] is best left to the Legislature and to the Division, respectively." *Id.* at 614, 928 *A.*2d 54.

Early in 2008, complaints about the perceived shortcomings of the workers' compensation system, including some that were similar to those identified in the *Flick* opinion and by plaintiffs, were explored in a series of articles published in the popular press. *See, e.g.,* John Martin, *How Jersey Fails its Injured Workers,* Star–Ledger, June 12, 2008, *available at* http://blog.nj.com/ledgerarchives/2008/06/how_jersey_fails_injured_worke.html; Dunstan McNichol & John P. Martin, *Politics Tangle a Safety Net for Workers Hurt on Job,* Star–Ledger, Apr. 7, 2008, at News 1, *available at* http://blog.nj.com/ledgerarchives/2008/04/politics_tangle_a_safety_net_f.html; John P. Martin, *This Wasn't Supposed to Happen,* Star–Ledger, Apr. 7, 2008, at News 5, *available at* http://blog.nj.com/ledgerarchives/2008/04/this_wasnt_supposed_to_happen.html. At least some of those criticisms were also directed to a perceived lack of effective enforcement power vested in the courts of compensation. See Editorial, Jersey Must Do Better By Injured Workers, Star–Ledger, Apr. 13, 2008, at Perspective 2, available at http://blog.nj.com/ledgerarchives/2008/04/jersey_must_do_better_by_injur.html (arguing that "[f]ines and other sanctions are needed to bring recalcitrant payers into line").[4]

Our Legislature did not sit idly by when these concerns were raised, but promptly convened a hearing in May 2008 to address the numerous questions that had been identified about the effective operation of the courts of compensation. *See* Senate Labor

---

[4] An archive of the articles published by the Star–Ledger on the perceived shortcomings of the workers' compensation system prior to 2008 may be found at http://blog.nj.com/ledgerarchives/2008/04/workers_compensation.html.

Committee, Examination of the Workers' Compensation System in New Jersey (May 5, 2008) (Hearing). Testimony elicited during the Hearing covered a variety of issues, but one focus of the committee's inquiry was the manner in which courts of compensation might be armed with additional tools to more effectively enforce the orders they issued to carriers requiring them to pay for treatment deemed appropriate under the Act.

Several witnesses testified at the Hearing that courts of compensation needed tools to enforce their orders against carriers that refused to comply with the orders to pay for treatment deemed appropriate for injured workers. Those witnesses offered a variety of general and specific suggestions relating to the enforcement mechanisms that would be appropriate for recalcitrant carriers.

For example, David J. Socolow, Commissioner of the New Jersey Department of Labor and Workforce Development, testified that the Legislature should "amend the statute to provide additional statutory sanctions and enforcement powers for workers' compensation judges, similar to the kinds of powers that Superior Court judges have." *Id.* at 7–8. Senate President Stephen M. Sweeney testified that "[s]ubstantial fines should be levied for workers that aren't getting payments that they're entitled to from insurers." *Id.* at 48; *accord id.* at 79 (testimony of Charles Wowkanech). An exchange among Senator Paul Sarlo, who served as the Committee Chair, and two court of compensation judges, focused on enforcement powers more generally, including the possibility of granting them contempt authority. *Id.* at 62–66.

Following the Hearing, the Legislature again acted swiftly. The bill that was intended to provide the courts of compensation with additional enforcement authority, S. Bill No.1913 (May 22, 2008), was introduced as part of a package of bills that were designed to address the numerous concerns that had been raised during the then recently concluded Hearing. *See* S. Bill No.1914 (May 22, 2008) (strengthening enforcement against employers that

fail to provide coverage); S. Bill No.1915 (May 22, 2008) (requiring proof of coverage); S. Bill No.1916 (May 22, 2008) (addressing emergent medical care); S. Bill No.1918 (May 22, 2008) (requiring Insurance Fraud Prosecutor to establish liaison and investigate employers that fail to provide coverage). Our analysis of the meaning and intent of the amendments that the Legislature eventually enacted, however, requires an explanation of the state of the law prior to the Appellate Division's decision in *Flick*.

Prior to the 2008 amendments, the Act provided courts of compensation with authority to enhance amounts due by twenty-five percent if the court concluded that a carrier had "unreasonably or negligently delay[ed] or refuse[d]" paying a claim and included a presumption of unreasonableness or negligence if the delay were thirty days or more. *N.J.S.A.* 34:15–28.1. Moreover, regulations adopted by the Division of Workers' Compensation authorized courts of compensation to utilize other enforcement mechanisms, which included the power to "[r]efer matters for other administrative, civil or criminal proceedings." *N.J.A.C.* 12:235–3.14(a)(5) (repealed 2009).

The Hearing demonstrated that these tools were insufficient to allow the courts of compensation, when faced with a recalcitrant carrier, to enforce their orders that payments be made. As an examination of the evolution of the statutory amendments demonstrates, the Legislature considered alternative avenues for enhancing the means for enforcement and selected its remedy from among them. The Legislature chose to combat the problem of carrier recalcitrance by authorizing courts of compensation to make contempt findings. In so doing, it made clear its intention to replace the regulation's earlier option of referral to other tribunals, including a referral to the Superior Court for a civil proceeding.

The language of the bill as it was initially proposed included an expansion of the option provided in the regulation that had previously been thought to be the source of the referral to the Superior Court. S. Bill No.1913 (May 22, 2008). In relevant part,

subsection (e) of the original bill authorized the court of compensation, if faced with a recalcitrant carrier, to "refer matters to other administrative, civil or criminal proceedings including referrals to the Superior Court for contempt proceedings." *Ibid.* That bill was thereafter amended in committee to create a different remedy, in some ways broader and in other ways narrower than the original bill's language would have provided. That enforcement mechanism, which was ultimately passed by both legislative houses and enacted into law, replaced the above-quoted language with the authority now codified in *N.J.S.A.* 34:15–28.2, which provides:

> If any employer, insurer, claimant, or counsel to the employer, insurer or claimant, or other party to a claim for compensation, fails to comply with any order of a judge of compensation or with the requirements of any statute or regulation regarding workers' compensation, a judge of a compensation may, in addition to any other remedies provided by law:
>
> . . . .
>
> e. Hold a separate hearing on any issue of contempt and, upon a finding of contempt by the judge of compensation, the successful party or the judge of compensation may file a motion with the Superior Court for enforcement of those contempt proceedings.
>
> [*N.J.S.A.* 34:15–28.2.]

In altering the language of subsection (e), the Legislature removed the suggestion that courts of compensation would be authorized to refer matters for civil or other proceedings, thus making the available remedy narrower than the earlier interpreting regulation provided. At the same time, however, the Legislature granted courts of compensation a contempt remedy, by authorizing those courts to make a finding of contempt, which a party is then permitted to pursue in Superior Court in the nature of an enforcement proceeding.[5]

The Legislature's 2008 amendment created a variety of enforcement mechanisms that can be used to combat failure to comply

---

[5] Although not specified in the statute, we conclude that the proceeding would be in the nature of a summary proceeding to enforce agency orders brought in the Superior Court, Law Division, pursuant to *Rule* 4:67–6, rather than an appeal from a final agency decision cognizable in the Appellate Division, *see R.* 2:2–3(a)(2).

with an order in addition to the newly authorized contempt finding. Those other mechanisms include the imposition of costs, interest and an additional twenty-five percent assessment for unreasonable delay, *N.J.S.A.* 34:15–28.2(a), additional fines and monetary penalties for unreasonable delay, *N.J.S.A.* 34:15–28.2(b), closing proofs, dismissing claims and suppressing defenses, *N.J.S.A.* 34:15–28.2(c), and excluding evidence or witnesses, *N.J.S.A.* 34:15–28.2(d). *Accord Quereshi v. Cintas Corp.*, 413 *N.J.Super.* 492, 502, 996 *A.*2d 465 (App.Div.2010) (commenting on range of remedies available to compensation courts to address non-compliance with orders).

Although those added enforcement tools include a grant of authority to the compensation court to "take other action," *N.J.S.A.* 34:15–28.2(f), we do not understand that the Legislature intended that general language to be an invitation for the creation of a new cause of action of the kind urged upon us by plaintiff. On the contrary, the evolution of the bill that created the contempt remedy suggests that the Legislature identified, and enacted, the precise remedy for the problem of the recalcitrant carrier that it deemed appropriate. For the same reasons, we are not persuaded by our dissenting colleague's argument that the Legislature, by inclusion of the phrase "in addition to any other remedies provided by law" intended to pave the way for a broadly available civil remedy. *See post* at 298–99, 48 *A.*3d at 1004. That reasoning, based largely on decisions from other jurisdictions, ignores the fact that our Legislature directly confronted the question and eliminated the original bill's authorization for civil referrals.

■ It is in the context of these amendments to the statute, enacted by the Legislature directly in response to the problem plaintiff contends he has faced from an allegedly recalcitrant carrier, that we consider plaintiff's request that we find a common law right of action against the carrier as well. And it is in this context that we conclude that there can be none. We do so for three reasons.

First, the worker's compensation system has been intentionally designed to provide injured workers with a remedy for their injuries outside of the ordinary tort or contract remedies cognizable in our Superior Courts. Although there are exceptions to the way in which that system operates, they are ones grounded squarely on the statutory scheme itself, *see N.J.S.A.* 34:15–8, and do not arise from remedies found more generally in the common law.

Second, in its most recent pronouncement about the way in which to ensure that the orders of the compensation courts are enforced, the Legislature explicitly rejected the broad authorization to pursue a remedy in the Superior Court, adopting instead a narrower focus that gives greater authority to the compensation courts to act through a contempt power. We discern from that amendment a conscious choice by our Legislature to create the remedy it deems appropriate and we see no basis on which to substitute a different remedy for the one that the Legislature has chosen. Should that preferred system of compensation and that preferred enforcement mechanism ultimately prove to be inadequate, evaluation of alternatives, including permission to pursue a claim in the Superior Court, are the province of our Legislature in light of the historical role that our system of compensation for injured workers has played.

Third, plaintiff's proposed remedy, at its core, would threaten to obliterate the Legislature's carefully crafted system of workers' compensation, substituting for that well-established mechanism a cause of action for pain and suffering and for punitive damages for delay in payment or delay in authorizing treatment. Such a cause of action would soon become every injured employee's preferred manner of securing relief. More to the point, it would do so in circumstances in which the remedies found in the Act itself are both adequate and entirely appropriate. That is, plaintiff's essential argument is that his condition worsened and he was required to undergo further treatment because of the carrier's delay. However, courts of compensation have the authority to address

each of these complaints. They can, for example, order the carrier to pay for the additional treatment that the injured worker requires, *N.J.S.A.* 34:15–15; *see Cortes v. Interboro Mut. Indem. Ins. Co.*, 232 *N.J.Super.* 519, 526, 557 *A.2d* 1019 (App.Div.1988) (citing authorities for proposition that increased disabilities and aggravated injuries are compensable), or direct that the employee be reimbursed for such care as the employee has been required to arrange, *see Larson's Workers' Compensation Law* § 94.02(4)(a) (observing that claimant may make suitable arrangements at employer's expense if employer fails to furnish prompt and adequate medical care). Moreover, the statute specifically permits the court of compensation to impose an additional assessment, *see N.J.S.A.* 34:15–28.1, as well as fines and penalties on the carrier, *see N.J.S.A.* 34:15–28.2; *Quereshi, supra,* 413 *N.J.Super.* at 502, 996 *A.2d* 465.

Our Legislature has established a statutory mechanism for addressing workplace injuries. That system of compensation includes a series of tools that our Legislature has chosen to make available to the courts of compensation to enforce the orders that are issued to carriers. Most recently, our Legislature has added the authority to make contempt findings as its means of strengthening the tools that the court of compensation may bring to bear upon a recalcitrant carrier. In light of the clear legislative command, we deem it both unnecessary and inappropriate to create an alternate avenue of redress through a common law cause of action.

## IV.

The judgment of the Appellate Division is affirmed.

Justice ALBIN, dissenting.

The Workers' Compensation Act (the Act), *N.J.S.A.* 34:15–1 to –128, represents an historic social compromise between employers and their workers. Under the Act, employers are required to provide their employees with relatively prompt medical benefits

for workplace injuries, and, in exchange, employees relinquish their right to sue for a much larger recovery under the common law. In this case, a workers' compensation carrier repeatedly refused to provide mandated medical benefits to a seriously injured worker—in defiance of several court orders—resulting in the worker suffering a severe aggravation of his physical injuries, needless pain and suffering, irreparable emotional distress, and a significant exacerbation of symptoms of depression and anxiety.

The worker filed a common-law action against the carrier in Superior Court, seeking to be made whole for the injuries directly caused by the carrier's intentional disobedience of its legal obligations under the Act and its contumacious disregard of court orders. The majority affirms the dismissal of the lawsuit on the ground that the worker is limited to certain remedies available under the Act, remedies that fall woefully short of making the worker whole for the damages he has suffered.

This case represents a carrier's intentional and unilateral shredding of the social compact embodied in the Workers' Compensation Act. Yet, the carrier is now allowed to use the Act as a shield from a common-law suit that would hold it accountable for its willful refusal both to obey court orders and to provide timely medical benefits to a severely injured worker. Nothing in the language of the Act suggests that the Legislature intended to give shelter to a carrier that not only breaches its covenant of good faith and fair dealing with a worker but also inflicts on him a new injury outside of the workplace. I do not believe that the Act was intended to protect a carrier that displays absolute contempt for the law, thus causing disastrous consequences to a worker within its charge. And neither do a number of other jurisdictions that have addressed this issue under their state workers' compensation schemes.

I therefore respectfully dissent.

## I.

In May 1995, plaintiff Wade Stancil suffered a serious workplace injury while employed by Orient Originals. Defendant Atlantic

Employers (ACE USA) is the workers' compensation carrier for Orient Originals. In July 2006, the Division of Workers' Compensation entered an order declaring Stancil totally disabled.[6] The order required that ACE USA pay for Stancil's past and on-going medical treatment. ACE USA refused to do so, even for the medical treatments recommended by its own experts. That refusal persisted even as Stancil's physical and mental health worsened. Eventually, Stancil sought relief from the Division of Workers' Compensation. Compensation judges ordered ACE USA, on multiple occasions, to comply with its duty to provide medical benefits. ACE USA defied those orders. ACE USA would not refund Stancil for prescription medication, or make payments for pre-surgery testing or for surgery itself.

Because of ACE USA's recalcitrance, Stancil's physical and mental health severely deteriorated from lack of appropriate medical care. An orthopedic surgeon reported that "the delay in cervical condition treatment has contributed to the chronicity of [Stancil's] problem." A board certified psychiatrist noted that ACE USA's refusal to provide for medical treatment caused Stancil "stress, anxiety, frustration, migraines and irritability," "irreparable emotional distress[,] and a significant exacerbation" of symptoms of his "Major Depressive Disorder and Post Traumatic Stress Disorder."

Faced with ACE USA's brazen intransigence, Compensation Judge Geoffrey Rosamond stated that "it is rare to see a willful, deliberate violation of an Order after Order after Order." From his experience, ACE USA exhibited "the most outrageous display of arrogance and disregard of Court Orders that collectively the Judges here in Jersey City have seen."

In short, ACE USA's repeated and deliberate refusals to comply with court orders caused physical and mental harm to a worker protected by the Workers' Compensation Act.

---

[6] Apparently, Stancil suffered injuries to his neck, back, and shoulder, which required surgery, physical therapy, and pain management.

## II.

### A.

Under the Workers' Compensation Act, an employee who suffers an injury "arising out of and in the course of employment" is entitled to medical treatment and compensation, "without regard to the negligence of the employer." *N.J.S.A.* 34:15–7. In return for those benefits, the employee's right of recovery is limited to the terms of the Act, except in cases in which the employer commits an "intentional wrong." *N.J.S.A.* 34:15–8. In essence, the Act is a social compact, "an historic 'trade-off' whereby employees relinquish their right to pursue common-law remedies in exchange for prompt and automatic entitlement to benefits for work-related injuries." *Charles Beseler Co. v. O'Gorman & Young, Inc.*, 188 *N.J.* 542, 546, 911 *A.*2d 47 (2006) (internal quotation marks omitted).

In this case, ACE USA breached the social compact by its willful refusal to pay court-ordered benefits, rendering a nullity the whole purpose of the Workers' Compensation Act. As a direct consequence, Stancil suffered aggravation of his original work-related injuries and additional emotional and mental harm. Whether, under these egregious circumstances, a compensation carrier can be held accountable in a common-law action is a case of first impression for our Court. Neither the language of the Workers' Compensation Act nor its legislative history provides ACE USA with a safe harbor from a common-law suit that would make Stancil whole for any damages he has suffered.

### B.

In 2008, the Legislature empowered the Division of Workers' Compensation with a non-exhaustive set of remedies to compel a carrier to comply with its statutory duties under the Act. *N.J.S.A.* 34:15–28.2 provides that "[i]f any ... insurer ... fails to comply with any *order* of a judge of compensation or with the requirements of any statute or regulation regarding workers' compensa-

tion, a judge of compensation may, *in addition to any other remedies provided by law*," impose certain enumerated penalties. (Emphasis added). Among the penalties a compensation judge may impose are an "assessment not to exceed 25% of moneys due," *N.J.S.A.* 34:15–28.2(a); a fine not to exceed $5,000, to be paid into the Second Injury Fund, *N.J.S.A.* 34:15–28.2(b); closure of proofs, dismissal of claims, and suppression of defenses, *N.J.S.A.* 34:15–28.2(c); and exclusion of evidence or witnesses, *N.J.S.A.* 34:15–28.2(d). In addition, the compensation court can hold a contempt hearing, *N.J.S.A.* 34:15–28.2(e), or take any other action it sees fit, *N.J.S.A.* 34:15–28.2(f).

The Legislature clearly allowed for "other remedies provided by law" in addition to the penalties that the compensation judge is authorized to impose pursuant to *N.J.S.A.* 34:15–28.2. That statute places no limitation on the filing of a common-law action against a carrier that causes a disabled worker either a new injury or the aggravation of an old injury—injuries caused outside of the workplace. Had the Legislature intended *N.J.S.A.* 34:15–28.2 to be the exclusive remedy for injuries caused by a compensation carrier's bad-faith failure to provide medical treatment or benefits, it knew how to say so.

Several state courts have concluded that damages caused by the bad-faith failure to provide statutorily mandated medical treatment and benefits falls outside their jurisdictions' workers' compensation schemes. Those courts have presented persuasive reasons, grounded in fairness and logic, for allowing common-law causes of action.

### C.

Some courts have held that "[a]n insurance carrier's bad faith in failing to pay court-ordered benefits is not reasonably encompassed within the 'industrial bargain' by which the worker 'gave up the right to bring a common law negligence action against the employer and in return received automatic guaranteed medical and wage benefits.' " *Sizemore v. Cont'l Cas. Co.*, 142 *P*.3d 47, 52

(Okla.2006) (quoting *Parret v. UNICCO Serv. Co.*, 127 *P*.3d 572, 578 (Okla.2005)); *see also Hough v. Pac. Ins. Co.*, 83 *Hawai'i* 457, 927 *P*.2d 858, 866 (1996); *Franks v. U.S. Fid. & Guar. Co.*, 149 *Ariz.* 291, 718 *P*.2d 193, 197 (Ct.App.1985); *Travelers Ins. Co. v. Savio*, 706 *P*.2d 1258, 1265 (Colo.1985). That approach is rooted in the notion that "[a]n employee is an intended third-party beneficiary of an employer's contract with [a carrier] for workers' compensation coverage," and therefore the carrier's duty to act in good faith also extends to its dealings with an employee. *Hough, supra*, 927 *P*.2d at 869 (footnote omitted); *cf. Price v. N.J. Mfrs. Ins. Co.*, 182 *N.J.* 519, 526, 867 *A*.2d 1181 (2005) ("[E]very insurance contract contains an implied covenant of good faith and fair dealing."). Thus, an injury caused by a compensation carrier's failure to honor its covenant of good faith and fair dealing with an injured worker gives rise to a cause of action premised on a "contractual obligation." *Coleman v. Am. Universal Ins. Co.*, 86 *Wis*.2d 615, 273 *N.W*.2d 220, 223 (1979); *see also Gibson v. Nat'l Ben Franklin Ins. Co.*, 387 *A*.2d 220, 222 (Me.1978) (holding that mental distress resulting from deliberately withholding workers' compensation benefits "arises not out of appellant's original employment relationship but out of her relationship to the insurance carrier" as "compensation claimant with established remedial rights").

These courts have reasoned that an injury resulting from a compensation carrier's bad-faith refusal to provide medical treatment or benefits is separate and distinct from the original workplace injury and is wholly divorced from the employee's work itself. *See Gallagher v. Bituminous Fire & Marine Ins. Co.*, 303 *Md.* 201, 492 *A*.2d 1280, 1283 (1985). From that perspective, a carrier's deliberate refusal to tender statutorily mandated benefits to an injured worker "does not 'arise out of' the worker's employment" and "does not occur 'in the course of employment.'" *Sizemore, supra*, 142 *P*.3d at 52; *see also Franks, supra*, 718 *P*.2d at 201 ("The injury resulting from the intentional tort of bad faith is not compensable under the workers' compensation scheme because it does not arise out of or in the course of employment."); *cf.*

*N.J.S.A.* 34:15–7 (providing workers' compensation benefits to employees only for injuries "arising out of and in the course of employment"). Thus, a common-law cause of action—outside of the workers' compensation sphere—is available because the compensation carrier's bad-faith withholding of treatment and benefits does not arise out of the original employment relationship, for it necessarily "occur[s] long after the employment ha[s] ceased." *Coleman, supra,* 273 *N.W.*2d at 223.

This line of reasoning I find persuasive. It keeps faith with the penalty provisions of *N.J.S.A.* 34:15–28.2 that allow for "other remedies provided by law." The enumerated penalties do not make Stancil whole for ACE USA's bad-faith, deliberate refusal to abide by the Workers' Compensation Act and various court orders. ACE USA's defiance caused aggravation of old injuries and perhaps new ones, caused Stancil to suffer prolonged and unnecessary pain, and exacerbated psychiatric conditions, such as depression and post-traumatic stress disorder. "The penalty provisions of state schemes are not intended as remedies for intentional wrongdoings" by a compensation carrier. *See Hayes v. Aetna Fire Underwriters,* 187 *Mont.* 148, 609 *P.*2d 257, 262 (1980). As a matter of public policy,

> [t]he [Workers'] Compensation Act should not be a "shield" which will insulate those who would engage in intentional wrongdoing in the settlement and investigation of workers' claims. No one should be allowed intentionally and tortiously to cut off a claimant unilaterally for whatever purpose they choose and then hide behind workers' compensation exclusivity. . . .
>
> [*Ibid.*]

### III.

The provisions of *N.J.S.A.* 34:15–28.2 do not compensate Stancil for the needless injuries inflicted on him by a compensation carrier that has exhibited utter contempt for the law. We should not construe *N.J.S.A.* 34:15–28.2 to leave the victim without an adequate remedy. I believe that Stancil has alleged a common-law cause of action that survives outside the Workers' Compensa-

tion Act and that dismissal of his lawsuit gives ACE USA an unwarranted windfall.

I do not share the majority's concern that permitting a common-law action against ACE USA will open the proverbial floodgates of litigation outside the Workers' Compensation Act. Hopefully, ACE USA's outrageous conduct is idiosyncratic. If not, all the more need for the alternative remedy of a common-law bad-faith action.

I therefore respectfully dissent.

*For affirmance*—Chief Justice RABNER and Justices LaVECCHIA, HOENS and Judge WEFING (temporarily assigned)—4.

*For reversal*—Justices ALBIN—1.

*Not Participating*—Justice PATTERSON—1.