**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0883-18T3

LOUIS MAGNIFICO and
ANNAMARIE MAGNIFICO,
husband and wife,

     Plaintiffs-Appellants,

v.

NATHANIEL JAMES and
TOWNSHIP OF MILLBURN,

     Defendants-Respondents.

_____

Argued October 29, 2019 – Decided December 3, 2019

Before Judges Messano, Ostrer and Vernoia.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-4279-16.

Michael James Confusione argued the cause for appellants (Hegge & Confusione, LLC, attorneys; Michael James Confusione, of counsel and on the brief).

Leslie A. Koch argued the cause for respondents (Methfessel & Werbel, attorneys; Leslie A. Koch and Eric Labes Harrison, on the brief).

PER CURIAM

In this personal injury action arising out of a motor vehicle accident, plaintiffs Louis Magnifico and Annamarie Magnifico[1] appeal from amended orders granting summary judgment to defendants and dismissing their complaint. Louis and defendant Nathaniel James were coworkers employed by defendant Township of Millburn (Millburn) when they were involved in an accident while together in a Millburn-owned vehicle driven by James. Louis was severely injured in the accident, and he and Annamarie brought suit against James and Millburn, alleging: (1) James carelessly failed to operate the vehicle in a safe manner; (2) Millburn negligently permitted James to operate the vehicle; and (3) Annamarie incurred expenses from Louis's treatment and was deprived of Louis's society, services, and consortium.

In granting summary judgment, the motion court found the claims are barred by the Workers' Compensation Act (Act), N.J.S.A. 34:15-1 to -146, which generally provides the exclusive remedy against an employer and co-employees for employees injured in work-related accidents. On appeal, plaintiffs argue the motion court erred because their claims fall within the

---

[1] Because they share the same surname, we refer to plaintiffs by their first names for clarity and simplicity. We do not intend any disrespect by such informality.

A-0883-18T3

narrow exception to the Act's exclusivity requirement for cases of "intentional wrongs." Based on our review of the record in light of the applicable law, we disagree and affirm.

## I.

We discern the following material undisputed facts from the record before the motion court and view the facts and all reasonable inferences in the light most favorable to plaintiffs, the non-moving parties.[2] R. 4:46-2(c); Chiofalo v. State, 238 N.J. 527, 531 (2019) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

Louis and James were employed by Millburn's Department of Public Works. On March 26, 2015, Louis was a passenger in a Millburn-owned truck

---

[2] We limit our findings of the undisputed facts to those presented in the statement of material facts and opposition submitted to the motion court in accordance with Rule 4:46-2(a) and (b), and we do not consider or rely on information, evidence, or purported facts that were not presented to the motion court in accordance with the Rule. See Kenney v. Meadowview Nursing & Convalescent Ctr., 308 N.J. Super. 565, 573 (App. Div. 1998) (refusing to consider "factual assertions in [the] appeal that were not properly included in the motion . . . for summary judgment below" pursuant to Rule 4:46-2). Therefore, we reject the parties' reliance on any purported facts that were not included in the Rule 4:46-2(a) and (b) statements and that are asserted for the first time on appeal, even if they support such purported facts by citation to deposition transcripts that were included in the record presented to the motion court.

driven by James and was severely injured when the truck hit a tree and rolled onto its side. Immediately prior to the collision, Louis realized that the truck was off the road, James had his head down, and appeared to be asleep. Louis suffered significant injuries as a result of the accident.

James held a commercial driving license (CDL) since he was hired by Millburn in 2006. As part of the CDL process, James underwent an annual medical examination. During his 2008 examination, James was diagnosed with obstructive sleep apnea, for which he uses a CPAP machine[3] nightly. During his 2011 examination, James was diagnosed with type 2 diabetes and high blood pressure.

In accordance with the physical qualifications for drivers prescribed in the Federal Motor Carrier Safety Regulations, 49 C.F.R. §391.41-.45, James's doctor determined his medical issues did not disqualify James from maintaining his CDL. Each year he was employed by Millburn, James passed the medical examination and maintained his CDL. Millburn periodically had James's driver's abstract reviewed to ensure his license was in good standing and his

---

[3] CPAP, or continuous positive airway pressure, "is a treatment that uses mild air pressure to keep the airways open," and is used "to treat sleep-related breathing disorders including sleep apnea." CPAP, NAT'L HEART, LUNG, & BLOOD INST., https://www.nhlbi.nih.gov/health-topics/cpap (last visited Nov. 14, 2019).

A-0883-18T3

record complied with CDL regulations. In the 2007 and 2013 driver's abstract reviews, James was found to meet the requirements for safe driving according to 49 C.F.R. §391.25.

John Collas, Millburn's Supervisor of Roads and Sewers, testified Millburn relied on National Safety Compliance, Inc. to monitor and review drivers' abstracts and to perform drug and alcohol testing of its employees. John Bace, Millburn's Superintendent of Public Works, confirmed Millburn used National Safety Compliance, Inc. from the mid-1990's until approximately 2014, when GMS Compliance assumed the contract. According to Bace, the companies perform yearly re-verifications of the road crews' CDLs, review drivers' abstracts, and perform random drug testing throughout the year. The companies report the results to Bace.

James was involved in a number of prior accidents. On one occasion James struck a tree in a parking lot while salting, but he continued to work and salt the parking lots and street that day. On another occasion, James struck a tree while backing up and bent his vehicle's tailgate, but there was no serious damage to the vehicle and no insurance claim was filed. Finally, on a third occasion, James backed a truck into a garage and impacted its door jamb, but there was no damage to the truck.

A-0883-18T3

Collas was aware James suffered from sleep apnea. However, Superintendent Bace testified that having sleep apnea does not disqualify an otherwise qualified individual from possessing a CDL.

On July 2, 2014, less than one year before the accident in which Louis was injured, James passed a medical examination. Dr. Stanley Parman, M.D., approved the medical examination report, checking the box noting that James met the medical standards required to maintain his CDL.

Plaintiffs filed a complaint alleging that James negligently and carelessly drove the vehicle that proximately caused Louis's injuries, that James had been diagnosed with narcolepsy[4] prior to the accident, and that Millburn officials negligently entrusted James with the vehicle because they were aware of this diagnosis.

After the close of discovery, defendants filed a motion for summary judgment. Defendants argued plaintiffs did not sustain their burden to overcome the Act's exclusivity bar of civil claims by showing defendants committed an

---

[4] Narcolepsy is defined as "recurrent, uncontrollable, brief episodes of sleep, often associated with hypnagogic or hypnopompic hallucinations, cataplexy, and sleep paralysis." Dorland's Illustrated Medical Dictionary 1232 (32nd ed. 2012). James was never diagnosed with narcolepsy, and, on appeal, plaintiffs instead argue it was James's diagnosed sleep apnea that resulted in his negligent and careless operation of the vehicle that caused Louis's injuries.

A-0883-18T3

intentional wrong. Plaintiffs opposed the motion and filed a cross-motion to re-open discovery and compel production of certain limited discovery. Plaintiffs argued they had been unable to admit or deny many of defendants' factual averments submitted as part of the summary judgment motion, R. 4:46-2(a), because defendants had "failed to provide Mr. James's entire employment record." The court granted plaintiffs' motion, and defendants provided plaintiffs with James's entire employment record.

After hearing oral argument, the court granted defendants summary judgment, finding plaintiffs failed to sustain their burden of overcoming the Act's exclusivity bar by establishing defendants committed an intentional wrong. The court noted, however, that its decision did not affect plaintiffs' rights in Workers' Compensation Court or any benefits under the pension system.

On October 24, 2018, the court amplified its oral decision in a written statement of reasons. The court first found it undisputed that: (1) the accident occurred during the course of Louis's employment; and (2) Millburn's Workers' Compensation carrier paid for Louis's medical expenses in accordance with the Act, N.J.S.A. 34:15-8. The court then found that "[e]xcept in cases of

intentional wrong," the Act provides the exclusive remedy against an employer for employees injured in work-related incidents.

The court articulated the standard for the "intentional wrong" exception, noting the Act does not bar civil claims when an employee can show his or her employer knew an injury or death was substantially certain to result. The court analyzed the facts and determined plaintiffs did not satisfy their burden. The court found Millburn did not know injury or death was substantially certain to result when James drove the vehicle because Millburn had no information to suggest that any of James's prior accidents meant his driving posed a risk that an injury or death was substantially certain to result, and there was no evidence Millburn knew James had a propensity to fall asleep while driving. Finally, the court found that, even if James drove negligently, "a suit on account of such negligence is barred by the Workers' Compensation Act and does not attach liability to either James or [Millburn]."

Because all of the counts in plaintiffs' complaint asserted claims that are barred by the Act, the court dismissed the complaint with prejudice. The court further concluded Annamarie's claim must fail as a matter of law because Louis's claims were without merit.

A-0883-18T3

The court entered an order granting defendants' motion for summary judgment and dismissing the complaint. This appeal followed.

II.

We review a trial court's grant of summary judgment de novo. Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 414 (2016). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. R. 4:46-2(c). We must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 523. Moreover, we will only review the evidence presented to the trial court that is properly part of the record on appeal. Scott v. Salerno, 297 N.J. Super. 437, 447 (App. Div. 1997) ("[A]ny evidence on the issue which is not in the record cannot be considered. Appellate courts can consider a case only to the point at which it had been unfolded below.").

Here, plaintiffs do not argue there are genuine issues of material fact precluding summary judgment. They concede that the material facts are not disputed, but they argue those facts do not support the court's determination that

defendants are entitled to judgment as a matter of law. We therefore consider whether the motion court properly determined defendants were entitled to judgment as a matter of law when viewing the undisputed evidence in the light most favorable to plaintiffs, the non-moving parties. R. 4:46-2(c); Brill, 142 N.J. at 523.

The Workers' Compensation Act reflects "a historic trade-off whereby employees relinquish[] their right to pursue common-law remedies in exchange for automatic entitlement to certain, but reduced, benefits whenever they suffer[] injuries by accident arising out of and in the course of employment." Caraballo v. City of Jersey City Police Dept., 237 N.J. 255, 264 (2019) (quoting Stancil v. ACE USA, 211 N.J. 276, 285 (2012)). In exchange for guaranteed benefits under the Act, "the employee agrees to forsake a tort action against the employer." Ibid. (quoting Ramos v. Browning Ferris Indus., Inc., 103 N.J. 177, 183 (1986)). Thus, in most cases, the Act provides the exclusive remedy against an employer for employees injured in a work-related incident. Kibler v. Roxbury Bd. of Educ., 392 N.J. Super. 45, 47 (App. Div. 2007).

However, "[t]he Act's exclusivity can be overcome if the case satisfies the statutory exception for an intentional wrong." Van Dunk v. Reckson Assocs.

Realty Corp., 210 N.J. 449, 459 (2012); Caraballo, 237 N.J. at 265. Indeed,

N.J.S.A. 34:15-8 provides:

> [i]f an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.
>
> [(emphasis added)].[5]

The test for determining an "intentional wrong" has evolved. Charles

Beseler Co. v. O'Gorman & Young, Inc., 188 N.J. 542, 546 (2006). In Millison,

our Supreme Court noted "if 'intentional wrong' is interpreted too broadly, this

single exception would swallow up the entire 'exclusivity' provision of the Act."

101 N.J. at 177. To address this concern, the Court applied an "intent" analysis

to determine what constitutes "intentional wrong" within the meaning of the Act,

explaining:

> the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent. The defendant who acts in the belief or consciousness

---

[5] We recognize that the quoted language, adopted in 1961, expressly refers only to suits against fellow employees. But, as the Supreme Court explained in Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 185 (1985), "the intentional wrongs of an employer as well as those of co-employees fall outside of the boundaries of the Compensation Act" because "the employer can act only through its employees."

that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong.

[Ibid.]

In Laidlow v. Hariton Mach. Co., the Court explained that "an intentional wrong is not limited to actions taken with a subjective desire to harm, but also includes instances where an employer knows that the consequences of those acts are substantially certain to result in such harm." 170 N.J. 602, 613 (2002). The Court concluded that:

in order for an employer's act to lose the cloak of immunity of N.J.S.A. 34:15-8, two conditions must be satisfied: (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the Workers' Compensation Act to immunize.

[Id. at 617]

Thus, an employee seeking to prove his employer committed an intentional wrong has the burden of showing either that the employer had "a subjective desire to injure" or that "based on all the facts and circumstances of the case, . . . the employer knew an injury was substantially certain to result." Id. at 614. Finally, the bar to establish "substantial certainty" is high, with the Court

12

determining that "[a] probability or knowledge that such injury or death 'could' result, is insufficient," Van Dunk, 210 N.J. at 470, and this court concluding "[e]ven an injury 'caused by either gross negligence or an abysmal lack of concern for the safety of employees' is insufficient to satisfy the 'intentional wrong' exception," Kaczorowska v. Nat'l Envelope Corp., 342 N.J. Super. 580, 587-88 (App. Div. 2001) (quoting Marinelli v. Mitts & Merrill, 303 N.J. Super. 61, 72 (App. Div. 1997)).

Based on the record presented, we are satisfied the motion court properly determined plaintiffs did not sustain their burden of demonstrating that their claims fall within the narrow exception to the Act's exclusivity bar on civil claims. Plaintiffs did not present evidence establishing Millburn committed an intentional wrong either by having a subjective desire to injure Louis or by knowing an injury was substantially certain to result when allowing James to drive the vehicle.

Plaintiffs do not argue on appeal, and no evidence supports an argument, that Millburn had "a subjective desire to injure" Louis. Laidlow, 170 N.J. at 614. Thus, we focus on plaintiffs' argument that Millburn committed an intentional wrong because it knew an injury was substantially certain to result.

In conducting its analysis to determine whether defendants' actions presented a substantial certainty of injury or death, the motion court highlighted six undisputed facts that it found particularly relevant. Namely, the court noted: (1) James possessed an up-to-date CDL; (2) the CDL renewal process requires an annual physical to ensure licensees are medically capable of driving; (3) James was certified to drive at his annual physical; (4) no doctor suggested James had narcolepsy or any other medical issue that would affect his ability to operate a vehicle; (5) none of James's medical conditions were disqualifying under Federal Motor Carrier Safety Regulation 49 C.F.R. §391.41-45; and (6) James had a license in "good standing." The motion court concluded Millburn had no notice James's use of the truck was substantially certain to result in injury or death to an employee, and, in fact, "there [was] no competent evidence to demonstrate that the accident was even caused in whole or in part by any medical condition of James."

On appeal, plaintiffs contend Millburn's decision to allow James to drive large commercial trucks did, in fact, create a "substantial certainty" that a coworker would be injured, relying on two undisputed facts: (1) Collas knew that James had been in three prior accidents; and (2) Collas knew James suffered from sleep apnea. Plaintiffs also offer several other purported facts on appeal,

14

but they were not presented to the motion court in accordance with Rule 4:46-2. Because these factual allegations were not properly presented to the motion court during its consideration of the summary judgment motion, we cannot and do not consider them now.  Scott, 297 N.J. Super. at 447.

Plaintiffs first argue Millburn created a substantial certainty of injury or death by allowing James to drive the vehicle even though Collas knew James was diagnosed with sleep apnea.  To establish Millburn had a "substantial certainty," plaintiffs must demonstrate more than "[a] probability or knowledge that such injury or death 'could' result."  Van Dunk, 210 N.J. at 470.

Here, James has a successful history of renewing his CDL and passing his medical examinations, and Superintendent Bace confirmed that, in addition to not being disqualifying under 49 C.F.R §391.41-.45, sleep apnea does not disqualify an otherwise qualified individual from possessing a CDL.  Given these undisputed facts, James is a qualified driver with a condition that, by itself, does not prevent him from driving.  Further, Millburn appropriately has a robust policy in place for qualifying and re-qualifying its drivers.  Thus, there was no reason for Millburn to believe James's sleep apnea was "substantially certain" to result in injury or death.  Moreover, the summary judgment record is devoid of

A-0883-18T3

any competent evidence James's sleep apnea contributed to the causation of the collision.

Plaintiffs also argue Millburn created a substantial certainty of injury or death by allowing James to drive the vehicle even though Collas knew about James's prior accidents. However, "the mere knowledge and appreciation of a risk" falls short of "substantial certainty," Millison, 101 N.J. at 177, and "[e]ven an injury caused by either gross negligence or an abysmal lack of concern for the safety of employees is insufficient to satisfy the 'intentional wrong' exception," Kaczorowska, 342 N.J. Super. at 587-88.

Here, James was involved in three prior accidents during his ten-year employment. However, James's accidents were minor, intermittent, and did not result in any personal injury or significant damage to the vehicle. Thus, even if Millburn should have recognized a risk that an accident could occur again in the future, there was no evidence that an accident involving personal injury was substantially certain to occur if James drove a vehicle. Plaintiffs had the heavy burden to demonstrate Millburn exceeded even "gross negligence" and an "abysmal lack of concern" for safety; the fact that Millburn allowed James to drive after three minor accidents in a ten-year span is insufficient to establish a

"substantial certainty" that James's operation of a vehicle would result in injury or death.

The "intentional wrong" exception to the Act's exclusivity bar of civil claims is a purposefully narrow exception that imposes a heavy burden of proof. Millison, 101 N.J. at 177. Nothing in the record suggests the motion court erred in finding plaintiffs failed to sustain that burden. The motion court properly determined defendants were entitled to judgment as a matter of law.

We also address Annamarie's per quod claim for loss of consortium. It is well settled that a per quod claim is derivative in nature. Weir v. Mkt. Transition Facility, 318 N.J. Super. 436, 444 (App. Div. 1999); see Horvath v. Rimtec Corp., 102 F.Supp.2d 219, 236 (D.N.J. 2000) (determining the right to recover on a loss of consortium claim depends on the existence of tortious conduct on the part of the defendants). Indeed,

> A per quod claim is only maintainable by reason of a spouse's personal injury. It depends upon and is incidental to the personal injury action. Our courts have characterized it as a derivative claim, not a separate cause of action. Such claims must be joined with the primary claim in a single action. The derivative claim can rise no higher than the personal injury claim of the other spouse.
>
> [Weir, 318 N.J. Super. at 444 (quoting Tichenor v. Santillo, 218 N.J. Super. 165, 173 (App. Div. 1987))].

17

Here, Annamarie's loss of consortium claim is derivative of Louis's claims. Because Louis's claims are barred by the Act, Annamarie's claim also fails because the motion court properly granted summary judgment as to Annamarie's loss of consortium claim.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0883-18T3